UNITED STATES of America, Appellee,

v.

Dino CONTENTI, Defendant, Appellant.

No. 83–1746.

United States Court of Appeals,
First Circuit.

Argued April 3, 1984.
Decided June 1, 1984.

John F. Cicilline, Providence, R.I., for defendant, appellant.

William C. Bryson, Washington, D.C., with whom Lincoln C. Almond, U.S. Atty., and Edwin J. Gale, Sp. Atty., Dept. of Justice, Providence, R.I., were on brief, for appellee.

Before BOWNES and ALDRICH, Circuit Judges, and HUNTER,* Senior District Judge.

ELMO B. HUNTER, Senior District Judge.

Appellant Dino Contenti was indicted on December 9, 1982, by a grand jury convened in April, 1982, in a multi-count indictment charging six counts of mail fraud in violation of 18 U.S.C. 1341. The theory of the government's case at trial was that appellant, the owner of a financially failing wholesale food business, burned down the building in which his business was housed in order to collect the insurance proceeds. As a result of jury trial he was convicted of six counts of mail fraud and sentenced on the first three counts to concurrent terms of three years' imprisonment. On the remaining counts the district court suspended sentence in favor of a two year term of probation.

On this appeal appellant claims the district court erroneously denied his trial motion to dismiss the indictment because Rule 6(e) of the Federal Rules of Criminal

---

* Of the Western District of Missouri, sitting by designation.

Procedure had been violated by the prosecutor improperly disclosing matters presented to the earlier grand jury that had been convened in April, 1981, and whose term had expired in October, 1982. The investigation of appellant was begun by the April, 1981, grand jury which heard the testimony of a number of witnesses and presumably obtained other evidentiary material. However, that grand jury did not complete its investigation before its term ended, and "transferred" the investigation to the successor grand jury by having the prosecutor provide the product of the first grand jury to the successor grand jury without first having a court order authorizing him to do so.

At the time of the disclosure of the matters before the first grand jury to the successor grand jury Rule 6(e)(2) provided that "an attorney for the Government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules...." Effective August 1, 1983, Rule 6(e) was amended to expressly permit a prosecutor to disclose matters occurring before a grand jury to another grand jury without a prior court order. Fed.R.Crim.P. 6(e)(3)(C)(iii); reprinted, 97 F.R.D. 248. It is noteworthy that the Advisory Committee on Criminal Rules in transmitting its proposal to amend Rule 6(e) to the Committee on Rules of Practice and Procedure stated, "Rule 6(e)(3)(C)(iv) which will be renumbered as (iii), providing for disclosure by an attorney for the government to another grand jury, has been adopted *as being consistent with existing practice*, although not heretofore covered by a specific rule." (Emphasis added.) 97 F.R.D. at 260. In its Advisory Committee Note, 97 F.R.D. at 269, it is reported, "New subdivision [6](e)(C)(iii) recognizes that it is permissible for the government to make disclosure of matters occurring before one grand jury to another federal grand jury. Even absent a specific provision to that effect, the courts have permitted such disclosure in some circumstances. See, e.g., *United States v. Soco-*

*ny-Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); *United States v. Garcia*, 420 F.2d 309 (2nd Cir.1970). In this kind of situation, 'secrecy of grand jury materials should be protected almost as well as by the safeguards at the second grand jury proceedings, including the oath of the jurors, as by judicial supervision of the disclosure of such materials.' *United States v. Malatesta*, 583 F.2d 748 (5th Cir. 1978)."

Prior to the enactment of the new rule, the Second and Fourth Circuits had upheld the practice of disclosing matters occurring before a grand jury to a successor grand jury, even without a prior court order. See, *United States v. Penrod*, 609 F.2d 1092, 1097, (4th Cir.1979), cert. denied 446 U.S. 917 (1980) and *United States v. Garcia*, 420 F.2d 309 (2nd Cir.1970). The Fifth Circuit appears to take a different view of the practice. See, *United States v. Malatesta*, 583 F.2d 748 (5th Cir.1978). However, as stated in *Malatesta*, loc. cit. 754, "Violation of Rule 6 by disclosing grand jury testimony to another grand jury does not per se invalidate an indictment. We reserve for another day whether that would be the result if there were an abuse of the grand jury process." Thus, the Fifth Circuit takes the position that dismissal is appropriate only if the defendant can show that there was such an abuse of the grand jury process that one or more substantial rights of the defendant were impaired or that the integrity of the grand jury proceedings were impugned. *United States v. Phillips*, 664 F.2d 971, 1043–44 (5th Cir.1981), cert. denied 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); *United States v. Kabbaby*, 672 F.2d 857, 863 (11th Cir.1982); *United States v. Malatesta*, 583 F.2d at 753–54.

We have carefully examined the record before us. There is nothing in it to indicate that there was such an abuse of the grand jury process that any of the substantial rights of the defendant was impaired or that the integrity of the grand jury proceedings was impugned. In fact, the record does not demonstrate any abuse of

the grand jury process or of defendant's rights.

Since appellant is not entitled to his requested relief based on his reliance on the Fifth Circuit's rulings, we are not required to decide between the views of the Second and Fourth Circuits and the Fifth Circuit on this subject.[1]

Appellant challenges the sufficiency of the evidence to convict in two respects. He argues, first, the various mailings that formed the basis of the six charges were not in furtherance of the fraudulent scheme, and, second, it was not reasonably foreseeable that the mails would be used in the execution of the scheme.

The mail fraud statute provides it is a violation of federal criminal law to use the mail in furtherance of a scheme to defraud or to obtain money by false pretenses. 18 U.S.C. 1341. Each separate use of the mails in furtherance of the scheme constitutes a separate offense. In order for a particular mailing to be within the statutorily proscribed conduct it is required that the mailing be "for the purpose of executing such [fraudulent] scheme or artifice or attempting to do so...." 18 U.S.C. 1341.

In essence the Government's charges were that appellant used the mail or caused the mail to be used six different times in furtherance of the scheme to defraud. The

scheme to obtain the insurance money by false pretenses contemplated that (1) appellant would cause the premises of his business location and its contents to be insured by Lloyds of London through its agents and brokers; (2) he would thereafter cause a fire in order to cause damages to the premises and its contents; (3) he would report to or cause the reporting to Lloyds of London, its agents and brokers, the fact of the fire loss; (4) he would provide an insurance claim under the insurance policy; and (5) he would make false statements in a deposition taken of him by Lloyds of London in support of his fraudulent claim.

 It is settled law that an accused causes a letter to be delivered by mail where he does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where he could reasonably foresee that use of the mails would result. It is not necessary to prove that the accused mailed anything himself, or personally received anything through the mail, or actually intended that the mail be used. *United States v. Moss*, 591 F.2d 428 (8th Cir.1979). The mailed letter need not itself disclose any intent to defraud. It is necessary only that the letter be a part of or incident to some essential step in the execution of the scheme.[2] *United States v. Maze*, 414 U.S. 395, 400,

---

**1.** So that the reader of this opinion will not misread our views, we are persuaded that the views of the Second and Fourth Circuits regarding prior Rule 6(e) are preferable. Some grand jury investigations are long and extend beyond the term of the grand jury. Some do not commence until much of the term has passed. It is not in the public's interest to expect each new grand jury to start all over rather than accept the work product of the prior grand jury. A reasonable interpretation of Rule 6 should include this consideration. The prior Rule 6 included grand jurors among the persons to whom disclosure could be made without a prior court order. In our view this includes not only grand jurors subsequently impaneled under Rule 6(g) to replace grand jurors who had been discharged but also grand jurors of a successor grand jury who were endeavoring to complete an investigation begun by but not completed by the earlier grand jury. The referenced Advisory Committee on Criminal Rules Note regarding Rule 6 states that it was consistent with existing

practice for the successor grand jury to be given pertinent material obtained by the earlier grand jury. As provided in Rule 6(e)(3) disclosure "may be made to (i) an attorney for the government for use in the performance of such attorney's duty." Hence, it is within the Government attorney's duties to transfer that material to the successor grand jury so that it can carry out its grand jury duty to investigate possible federal crimes committed within its jurisdiction.

**2.** *United States v. Lea*, 618 F.2d 426 at 431, expresses it: "The mail fraud statute requires only that the mailing be incident to an essential part of the scheme. (Citations omitted.) We held previously in *Ohrynowicz v. United States*, 542 F.2d 715 (7th Cir.) cert. denied, 429 U.S. 1027, 97 S.Ct. 650, 50 L.Ed.2d 630 (1976) that a mailing satisfies this requirement where it is a normal concomitant of a transaction that is essential to the fraudulent scheme." See also *United States v. Galloway*, 664 F.2d 161, 163 (7th Cir.1981).

94 S.Ct. 645, 648, 38 L.Ed.2d 603 (1975); *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *United States v. Lea*, 618 F.2d 426 (7th Cir.) cert denied 449 U.S. 823, 101 S.Ct. 82, 66 L.Ed.2d 25 (1980). The fact that the scheme ultimately may not succeed does not render the mailings any less violative of the statute. See, *United States v. Pecora*, 693 F.2d 421, 425 (5th Cir.1982), cert. denied —— U.S. ——, 103 S.Ct. 3087, 77 L.Ed.2d 1348 (1983); *DeMier v. United States*, 616 F.2d 366, 369 (8th Cir.1980).

■ Examination of the evidence convinces that the six separate mailings were in furtherance of the scheme to defraud and that each of the mailings was made either by the appellant or caused by him to be made by his broker or by the agents and brokers of Lloyds of London under such circumstances that the use of the mail was foreseeable by appellant. To illustrate, the count one mailing was the notice of loss sent by appellant's agent to the insurance broker, an essential part of the process leading to payment of the claim. The count two mailing acknowledged receipt of the proof of loss and advised appellant's representative that the insurer would respond to the proof of loss within sixty days. The counts three and four mailings arranged for appellant to give his sworn statement, one of the customary steps leading to settlement, payment or denial of the claim, were prompted by appellant's submission of his proof of loss and furthered the processing of the claim. See, *United States v. Moss*, 591 F.2d at 436–37; *U.S. v. Lebovitz*, 669 F.2d 894 (3rd Cir.1982) cert. denied 456 U.S. 929, 102 S.Ct. 1979, 72 L.Ed.2d 446. The count five mailing conveyed the essence of appellant's sworn statement (deposition) to the insurer. The sworn statement was made in Rhode Island and needed to be forwarded to the insurer by mail. The count six mailing transmitted appellant's claim and supporting documents to insurer's agent and pressed insurer for a rapid and favorable resolution of the claim.

Viewed in the light of the applicable law it is clear from the evidence that there is no merit in appellant's claim of insufficiency of the evidence as applied to the six counts of the indictment.[3]

■ Appellant asserts that the Court erred in permitting the two witnesses, Scotti and DeLuca, to testify about loans made to him because these loans were irrelevant to the Government's theory of the case. One loan was made prior to the fire and the other one shortly afterwards. The difficulty with this contention is that it was relevant for the Government to show that appellant was in financial distress at the time of the fire. Such evidence of appellant's worsening financial condition and the financial condition of his food wholesale business was relevant to show motivation for burning down the business and the seeking to obtain the insurance proceeds. The weight and value of this evidence was for the jury to determine. Appellant further suggests the purpose of the evidence of both loans was to place appellant in a bad light with the jury by showing he made his business loans, not from banks, "but from people with a nefarious look," citing Rule 401 Fed.R.Evid. That rule permits the trial judge to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." There is no support for appellant's suggestion that the two lendors had a nefarious look. The trial judge by his ruling did not accept this rather imaginative approach to Rule 401 and in such circumstances the ruling of the trial judge is entitled to deference. We find no error in his admitting the evidence.

---

**3.** The Government suggests that since appellant received concurrent sentences of imprisonment on the first three counts and concurrent sentences of probation on the last three counts, under the concurrent sentence doctrine if the Court finds the convictions on any one count from each group to be supported, there is no need to review any of the other counts. However, we prefer under the circumstances before us to consider and rule on each and all of the six counts.

■ Finally, appellant contends the trial court committed reversible error in its instruction to the jury in response to the jury's question concerning false pretenses. After consulting counsel, the Court instructed that with respect to each count the jury must find that appellant formed the scheme to defraud before the mailing in that count occurred. The instruction given was legally correct and no error resulted.

Since no reversible error has occurred in this trial,

The judgment is affirmed.