UNITED STATES of America, Appellee,

v.

**Dominic L. SERINO,**
**Defendant, Appellant.**

UNITED STATES of America, Appellee,

v.

**John L. CLOSE, Defendant, Appellant.**

Nos. 86–1996, 86–1997.

United States Court of Appeals,
First Circuit.

Heard June 3, 1987.

Decided Dec. 21, 1987.

---

Before COFFIN, DAVIS* and SELYA, Circuit Judges.

DAVIS, Circuit Judge.

Dominic Serino [1] appeals from his conviction on five counts of mail fraud, 18 U.S.C. § 1341 and on one count of conspiracy to commit that crime, 18 U.S.C. § 371. He argues that the United States District Court for the District of Massachusetts committed error by refusing to dismiss Counts Two through Six (mail fraud) and by failing to give proper jury instructions. He also says that the district court erred in its sentencing procedure. We hold that the district court did not commit reversible error in its jury instructions or in its ruling on the defendant's motion to dismiss. However, we conclude that the court failed to comply fully with prescribed sentencing procedures, and therefore remand for further proceedings with respect to sentencing.

## I.

In August, 1980, Dominic Serino negotiated the purchase of the Tammany Hall Bar located in Lynn, Massachusetts. The agreement provided that co-defendant John Close would become president of Egg Rock, Inc., the corporation under which the business was organized, and that Close and Serino would assume the liabilities of the business and pay a $20,000 note.

In November, 1980, Serino obtained fire insurance for the Tammany Hall Bar from the St. Paul Surplus Lines Insurance Company ("Insurance Company") through the Woodward Insurance Agency. The premium was to be billed to Serino's wife, Judith Leonardi, and the policy, executed on November 17, 1980, listed Close as the owner of Tammany Hall. When no money had been paid on the policy by February 27, 1981, a Woodward employee made attempts to notify Serino or Close that the

Joseph Wine, for defendants, appellants.

Tobin N. Harvey, Asst. U.S. Atty., with whom Frank L. McNamara, Jr., U.S. Atty., and A. John Pappalardo, Asst. U.S. Atty., were on brief, for appellee.

---

* Of the Federal Circuit, sitting by designation.

1. Serino, who has filed briefs and presented oral argument through his attorney, is the only active appellant. Close has filed no briefs and offered no oral argument. Accordingly, throughout this opinion we refer to Serino as the appellant. We note that the argument concerning the sentencing hearing, *see* Part VI *infra*, has no application whatever to Close.

policy would be cancelled for non-payment. Finally, on February 27, 1981, Woodward requested the Insurance Company to issue a cancellation notice on the Tammany Hall policy. The insurance coverage under the policy remained in effect until the expiration of a ten-day grace period which began upon receipt of the cancellation notice. On February 27, 1981, a fire of incendiary origin completely destroyed the building that housed Tammany Hall.

After the fire Serino approached several tradesmen and businessmen who either had performed work at the bar or had supposedly supplied equipment to it. According to their testimony at trial, Serino requested them to create fictitious invoices drastically inflating the value of the work they performed or indicating that money was paid for equipment and supplies when it was not. A plumber and carpenter, who had been paid by Serino for a portion of some minor work at the bar, supplied invoices that falsely inflated their charges from approximately $1,000 to $12,000 and $1,200 to $7,500, respectively. A vending machine supplier produced an invoice indicating payment to him of $10,000 when in fact he had paid that amount to Serino for the privilege of placing machines in Tammany Hall and another bar owned by Judith Leonardi. A restaurant equipment supplier also gave Serino invoices totalling over $59,000 for equipment that was never supplied. At Serino's instruction all of those invoices were made out in the name of John Close, even though Close had never paid anything on any of the invoices.

Similarly, Serino requested the owner of the building in which Tammany Hall was located to write a letter stating that Close was the person leasing the property, when in fact the owner understood Serino to be the actual lessee.

In an attempt to collect a claim from the Insurance Company for damages from the fire, Serino hired Richard Settipane, a public adjustor. Settipane submitted the claim based on the insurance policy's coverage of $50,000, plus $6,000 for loss of earnings. In assisting with this claim, Settipane twice listed Close on proof-of-loss statements as the only person with any ownership interest in the property. With the help of another public adjustor, Settipane submitted a list of contents of the bar purportedly lost in the fire which had been drawn from the set of fictitious invoices supplied to Settipane by Serino.

Brian Merrick, an attorney representing the Insurance Company, eventually received through the mail all the documentation supporting the claim. This, in turn, prompted a chain of correspondence between Merrick and the Insurance Company (and their agents). These five mailings formed the basis of the five counts of mail fraud charged against Serino.

On March 17, 1986, Serino and co-defendant John Close were each indicted on one count of conspiracy to commit mail fraud and five counts of using the United States mails in furtherance of the conspiracy. A jury convicted Serino on all counts and convicted Close on the conspiracy count and four counts of mail fraud. Serino received concurrent five-year sentences on all six counts, plus a $5,000 fine on the conspiracy count.

## II.

Serino argues that Counts Two through Six of the indictment should have been dismissed. He contends first that Count Two fails to allege a fraudulent scheme and therefore the mailings identified in that count do not qualify as mailings made for the purpose of executing a scheme to defraud. This contention misperceives the nature of the fraudulent scheme alleged in the indictment and the relation of the mailings to that scheme.

Counts Two through Six, through their incorporation by reference of language from the conspiracy count (Count One), charge the defendants with devising a scheme to defraud the Insurance Company and taking steps in furtherance of that scheme. The five mail fraud counts then list five separate mailings that defendants allegedly caused for the purpose of executing the scheme. All five counts allege the same scheme to defraud. They differ only with respect to the description of the sepa-

rate mailings. Those descriptions provide the use of the U.S. mails element for each alleged offense. The allegation is that the defendants conceived an illegal plan to obtain money from the Insurance Company through the submission of fraudulent claims. Part of their scheme included making false and fraudulent representations, presumably because they believed these misrepresentations might in some way help to accomplish their objective. The letter that constituted the mailing in Count Two included two enclosures—a proof of loss statement and a non-waiver agreement, both of which indicated that Close was the only person with any ownership interest in Tammany Hall. These were averred as false statements made as part of the scheme to defraud the Insurance Company. Although defendants' concealment of Serino's ownership interest in the bar would not necessarily be illegal by itself, false statements about ownership were asserted to be part of their scheme to obtain money from the Insurance Company—a scheme that included submitting fictitious invoices in support of their claim—and therefore constituted fraud.

In essence, it is the relationship of the Count Two mailing to the fraudulent scheme that marks it as for the purpose of executing a scheme to defraud. The mailing need not by itself disclose a scheme to defraud; it is sufficient that the correspondence be part of or incident to some essential step in the execution of the scheme. *United States v. Maze,* 414 U.S. 395, 400, 94 S.Ct. 645, 648–49, 38 L.Ed.2d 603 (1975); *United States v. Contenti,* 735 F.2d 628, 631 (1st Cir.1984); *see also United States v. Fermin Castillo,* 829 F.2d 1194, 1197–99 (1st Cir.1987); *United States v. Martin,* 694 F.2d 885, 890 (1st Cir.1982). Here, the conveyance of the proof of loss statement to the Insurance Company (or its attorney) was an essential step toward the defendants obtaining payment on their fraudulent claim.

### III.

Appellant also contends the district court should have dismissed Counts Three through Six because the mailings listed in those counts hinder, rather than further, the operation of the fraudulent scheme. It is not necessary, however, that each mailing guarantee the success of the scheme, or even significantly advance it. "A mailing need only be closely related to the scheme and reasonably foreseeable as a result of the defendant's actions." *United States v. Silvano,* 812 F.2d 754, 760 (1st Cir.1987) (citing *United States v. Maze,* 414 U.S. at 399, 94 S.Ct. at 647–648). To the same effect is the recent decision in *United States v. Fermin Castillo, supra,* 829 F.2d at 1198–99. Although the language of the mail fraud statute, 18 U.S.C. § 1341, requires that the mailings be sent or caused to be sent "for the purpose of executing [the fraudulent] scheme," this court and others have given a liberal construction to this language. We have done so because Congress made it clear that its purpose in enacting this statute was to secure the integrity of the mails and to prevent their use as part of activities to defraud, not necessarily to punish fraud itself. *United States v. States,* 488 F.2d 761, 767 (8th Cir.1973), *cert. denied,* 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974); *see also McNally v. United States,* —— U.S. ——, 107 S.Ct. 2875, 2884, 97 L.Ed.2d 292 (1987) (Stevens, J., dissenting); *Parr v. United States,* 363 U.S. 370, 389, 390, 80 S.Ct. 1171, 1183, 4 L.Ed.2d 1277 (1960). It is sufficient that the mailings are incident to defendants' efforts in furtherance of the scheme. *United States v. Galloway,* 664 F.2d 161, 163 (7th Cir.1981), *cert. denied,* 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982).

Serino's point is that the Count Three through Six mailings did not further the scheme, but rather hindered it, because they contained the Insurance Company's attorney's reservations about the validity of the claim. Our response is that the focus ought to be concerned less with the precise contents of the particular mailings than with the role those mailings played in the execution of the scheme to defraud. As long as the mailings are sufficiently related to the scheme so that the execution of the scheme depended on those mailings

being sent, the proper nexus is established. *See United States v. Maze,* 414 U.S. at 402–03, 94 S.Ct. at 649–50; *United States v. Fermin Castillo, supra.*

Appellant could be expected to foresee that the processing of his fraudulent claim would require use of the mails. Success of his plan, were it to result, would depend on the sending and receipt of precisely those claim documents and supporting documentation that were in fact sent between the Insurance Company and its attorney. The fact that the attorney included in that transmittal his expressions of doubt about the validity of the claims does not sever those expected and necessary mailings from the fraudulent scheme. Appellant's reliance on *United States v. Tarnopol,* 561 F.2d 466, 473 (3d Cir.1977), is misplaced. There, the mailings that the court found to threaten the success of the fraudulent scheme contained far more than expressions of doubt; in that court's view, they were documents that on their face exposed the fact of the fraudulent transaction.

### IV.

■■■ There are also other challenges to the mail fraud counts of the indictment. Appellant contends that Counts Three through Six fail to allege any crime, maintaining that these counts omitted the accused's name and all of the elements required to convict an accused of mail fraud under 18 U.S.C. § 1341.

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that the indictment be "a plain, concise and definite written statement of the essential facts constituting the offense charged." The Supreme Court has provided guidance as to the degree of specificity with which an indictment must state the charges. "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907–08, 41 L.Ed.2d 590 (1974); *United States v. Sed-*

*lak,* 720 F.2d 715, 719 (1st Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984). An indictment should be specific enough to apprise the defendant of the nature of the accusation against him and to inform the court of the facts alleged. *Russell v. United States,* 369 U.S. 749, 766–68, 82 S.Ct. 1038, 1048–49, 8 L.Ed.2d 240 (1962). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself," as long as those words set forth all the elements of the offense without any uncertainty or ambiguity. *Hamling v. United States,* 418 U.S. at 117, 94 S.Ct. at 2907–08.

In the indictment before us, Counts Two through Six are combined together and Paragraph 16 (under Counts Two through Six) incorporates language charging the defendants with the conspiracy or devisement to defraud the Insurance Company, and elaborates the particular manner and means employed; Paragraph 17 (part of combined Counts Two through Six) then tracks the statutory language of the offense and identifies the defendants and intended victim by name. Both paragraphs obviously apply to all five counts. The indictment then lists in tabular format five separate mailings allegedly made to execute the scheme, with each mailing identified as supporting a particular count. This degree of detail in Counts Two through Six is adequate to inform the defendant of the nature of the offenses charged and to satisfy Rule 7(c)(1).

■■■ Appellant also urges that the indictment violates the Fifth Amendment's double jeopardy prohibition because Counts Two through Six incorporate by reference Paragraphs 10 through 15 of Count One. Serino views the reiteration in the latter five counts of the facts alleged to compose the scheme to defraud the Insurance Company as rendering Counts Two through Six nothing more than a repetition of the conspiracy charge of Count One. In this respect, appellant presents an argument on appeal—that Counts Two through Six of the indictment are multiplicious of Count One—that should have been raised prior to trial. Since it was not, it is deemed waived.

*United States v. Sheehy*, 541 F.2d 123, 130 (1st Cir.1976).

In any event, we hold that appellant's claim fails on the merits. An indictment is multiplicious when a single offense is charged in more than one count, *United States v. Maggitt*, 784 F.2d 590, 599 (5th Cir.1986), and the Double Jeopardy Clause of the Fifth Amendment prohibits multiple punishments for a single offense. However, it is "the role of Congress to define crimes and to determine the appropriate punishment for these offenses." *United States v. Lartey*, 716 F.2d 955, 967 (2d Cir.1983). If Congress defines the crimes charged as separate and distinct offenses, an accused may be charged with these offenses separately.

The test of whether an indictment is multiplicious is straightforward. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *see also United States v. Maggitt*, 784 F.2d at 599; *United States v. Marquardt*, 786 F.2d 771, 778 (7th Cir.1986); *United States v. Briscoe*, 742 F.2d 842, 845 (5th Cir.1984). Paragraphs 10 through 15 of Count One, which describe both the conspiracy to commit mail fraud and the methods and means by which the defendants sought to accomplish their plans, were incorporated by reference in each of Counts Two through Six (the substantive mail fraud counts). The facts alleged in Paragraphs 10 through 15 are reiterated in Counts Two through Six to set forth the devisement and intent elements of the substantive offenses. The mere incorporation by reference of a conspiracy count into a substantive count does not constitute multiplicity. *See United States v. Kirby*, 587 F.2d 876 (7th Cir.1978) (conspiracy and mail fraud counts); *cf. United States v. Aleman*, 609 F.2d 298 (7th Cir. 1979) (incorporation by reference of substantive count into conspiracy count is not multiplicity), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). In addi-

tion to the incorporated paragraphs, Counts Two through Six each contains a different allegation of fact that is required to be proved for a mail fraud conviction— i.e., that a mailing was made to execute the mail fraud scheme. The allegation and proof of this additional fact for each of Counts Two through Six marks them as distinct and separate offenses, and thus satisfies the *Blockburger* test.

## V.

Serino asks us to find prejudicial error in two of the jury instructions given by the trial court. When we review jury instructions, we do not judge a single instruction to the jury in isolation, but rather in the context of the overall charge. *United States v. Park*, 421 U.S. 658, 674, 95 S.Ct. 1903, 1912–13, 44 L.Ed.2d 489 (1975); *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973). "Moreover, in reviewing jury instructions, our task is also to view the charge itself as part of the whole trial." *United States v. Park*, 421 U.S. at 674, 95 S.Ct. at 1913.

The district court stated as part of its charge to the jury the following instruction:

The indictment also alleges that it was part of the scheme that the Defendants Serino and Close would make false representations and conceal material facts concerning their ownership interests in the bar known as Tammany Hall. If you find beyond a reasonable doubt that the defendants did conceal their ownership interests in an effort to obtain insurance proceeds, you should conclude that they were engaged in a scheme to defraud.

Appellant draws from this instruction an inference that, if the jury were to conclude that the defendants did no more than conceal their ownership interests in Tammany Hall, the jury would be free to find that the concealment of Serino's interest was *per se* fraudulent and thus sufficient to prove a fraudulent scheme under the statute. That reading glosses over the careful wording given by the district court and misperceives

the instruction's relation to the evidence presented throughout the trial.

The instruction noted first that the concealment of ownership was only "part of the scheme" to defraud alleged in the indictment. Furthermore, the court narrowly instructed the jury to conclude that the defendants were engaged in a scheme to defraud if the jury found that the defendants concealed their ownership interests "in an effort to obtain insurance proceeds." This limiting phrase, given context by the evidence of the defendants' misrepresentations in documents supporting their insurance claim concerning their ownership interests, properly constrained the jury to find a scheme to defraud if the concealment of ownership was done for the particular purpose of obtaining the insurance proceeds.

Appellant likewise takes exception to the court's refusal to instruct the jury that "a mailing that tends to threaten the success of the fraudulent scheme rather than to further it does not qualify as mail within the meaning of the mail fraud statute." As we noted in Part III, *supra,* appellant's view of the definition of "mailings" under this statute misconstrues the law as applied to the facts of this case.

### VI.

■ Federal Rule of Criminal Procedure 32(a)(1)(A) provides:

(1) *Imposition of Sentence....* Before imposing sentence the court shall (A) determine that the defendant and the defendant's counsel have had the opportunity to read and discuss the presentence investigation report made available pursuant to subdivision (c)(3)(A) or summary thereof made available pursuant to subdivision (c)(3)(B)....

Appellant contends that the district court failed to comply with this requirement because the court did not ask Serino or his counsel whether they had an opportunity to read and discuss the presentence report. The purpose of this requirement is to establish "a record reflecting that the defendant has had a realistic opportunity to read,

discuss, and object to the report." *United States v. Eschweiler,* 782 F.2d 1385, 1388 (7th Cir.1986) (footnote omitted). Despite the court's failure to pose a specific question to defendant or his counsel concerning their familiarity with the presentence report, a review of the sentencing hearing persuades us that defendant and his counsel were abundantly familiar with the report. Counsel made objections to specific portions of the report, including a page citation. The court entertained these objections, discussing them briefly with counsel. All that is required by Rule 32(a)(1)(A) is that the court determine that the defendant and his counsel have had the opportunity to read and discuss the report. It is apparent from the record that the district court made such a determination.

■ Appellant's second objection to the sentencing procedure is more troubling. He objects to the district court's failure to follow the prescriptions of Fed.R.Crim.P. 32(c)(3)(D). That rule provides as follows:

(D) If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

Serino's counsel objected to three statements in the report: (1) that Serino knew at the time of the fire that his insurance policy had been cancelled; (2) that Serino knew the fire would occur before it actually did; and (3) that Serino's motive for involvement in the scheme was to recover for an unsuccessful business venture. Although the court acknowledged counsel's objections (the judge said "All right"), the record is very unclear to what extent the

court may have relied on this challenged information in meting out its sentence. Nor did the court make a written finding on any of the three objections.

Having determined the district court failed to comply with the literal requirements of Rule 32(c)(3)(D), we turn to the question of whether a remand for resentencing is in order. Although this precise issue has not come before us since Rule 32(c)(3)(D) was enacted in 1983, *cf. United States v. Santamaria,* 788 F.2d 824, 829 (1st Cir.1986) (failure to attach record of court's findings on disputed portions of presentence report required remand for that purpose), we note that the leading trend among other circuits is to remand for resentencing when the district court has failed to comply with this rule. *E.g. United States v. Stewart,* 770 F.2d 825, 832 (9th Cir.1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 888, 88 L.Ed.2d 922 (1986); *United States v. O'Neill,* 767 F.2d 780, 787 (11th Cir.1985); *United States v. Velasquez,* 748 F.2d 972, 974 (5th Cir.1984) ("A sentence is imposed in an illegal manner if it fails to comply with the procedural rules in imposing sentences."). This result is, of course, appropriate in cases in which it is plain that the court relied on the challenged information in determining the sentence. *See United States v. Rone,* 743 F.2d 1169, 1175–76 (7th Cir.1984). It may also be appropriate when it is ambiguous whether the challenged information may have significantly influenced the nature or length of sentence imposed. *United States v. Reynolds,* 801 F.2d 952, 958 (7th Cir.1986); *see also United States v. Edwards,* 800 F.2d 878, 881–82 (9th Cir.1986); *United States v. Eschweiler,* 782 F.2d at 1389.[2]

But there is also another alternative. In *United States v. Bradley,* 812 F.2d 774, 782 (2d Cir.1987), the Second Circuit held that in some cases no more was required than a remand to the sentencing judge for

appropriate findings. We think that, given the ambiguous nature of the record, that course would be suitable here. If the district judge indicates that the disputed items were not taken into any account for purposes of sentencing and endorses a written disclaimer to that effect on the presentence report, then the sentence should stand. If, however, those items were taken into account for sentencing purposes, then the district court should so indicate and should vacate the sentence and proceed to hold a new sentencing hearing which complies fully with the requirements of Fed.R.Crim.P. 32(c)(3)(D). Serino's case will therefore be remanded to the sentencing judge to this end.

CONVICTIONS AFFIRMED. APPEAL NO. 86–1996 REMANDED FOR FURTHER PROCEEDINGS.

---

2. The Government argues that Rule 32(c)(3)(D), as amended, "only embroiders due process protections already in place." However, we agree with the Seventh Circuit:

The showing necessary to demonstrate a constitutional violation should not be confused with that required to make out a Rule 32

violation. Resentencing may be necessary under the Rule even though a defendant's right to due process has not been violated. *Eschweiler,* 782 F.2d at 1388; *see also United States v. Petitto,* 767 F.2d 607, 610 (9th Cir.1985) (failure to strictly comply with Rule 32(c)(3)(D) will result in remand).