17 F.3d 1435
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Arundel Deverre WORRELL, Defendant-Appellant.
 No. 93-5257.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 10, 1993.
Decided March 2, 1994.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Winston-Salem. Frank W. Bullock, Jr., Chief District Judge.
 John Stuart Bruce, Deputy Federal Public Defender, Greensboro, N.C., for appellant.
 Michael Francis Joseph, Assistant United States Attorney, Greensboro, N.C., for appellee.
 On Brief: William E. Martin, Federal Public Defender, Greensboro, N.C., for appellant.
 Benjamin H. White, Jr., United States Attorney, Greensboro, N. C., for appellee.
 M.D.N.C.
 AFFIRMED.
 Before WILKINSON, LUTTIG, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Arundel Worrell pled guilty to two charges stemming from his involvement in a conspiracy to distribute crack cocaine. He now raises several challenges to the plea proceeding and to the sentence resulting from that plea. We find that the challenges lack merit, and therefore affirm the judgment of the district court.
 
 I.
 
 2
 In February 1992, Arundel Worrell, Lloyd Williams, and Fitz Bell agreed to engage in the distribution of cocaine base, or "crack." Under this plan, Worrell would obtain crack cocaine in Florida and travel to Virginia or North Carolina to give the crack to Williams. Bell would obtain the crack from Williams, and then sell it to Charles Harris, a distributor in Mt. Airy, North Carolina. This pattern of distributional activity continued from February until July of 1992.
 
 
 3
 During the summer of 1992, an undercover officer began investigating the drug distribution activities in Mt. Airy. In the course of the investigation, the officer purchased large amounts of cocaine base from Williams and Bell. In September 1992, the officer negotiated to buy 15 ounces of crack from Williams at the house of Herman Stewart, where Williams was living at the time. On September 19, Worrell brought 15 ounces of cocaine base from Florida to Stewart's house, gave the drugs to Williams, and told Williams to charge $35,000. When Williams showed the package of cocaine base to the undercover officer, the officer arrested Williams, Worrell, Bell, and Stewart. The officer then seized the 313.7 grams of crack cocaine that Williams intended to sell him. After searching Williams' bedroom, the officer also recovered and seized 22.9 grams of crack, $10,111.25 in U.S. currency, and copies of wire transfers from Williams to Worrell totalling $21,500.
 
 
 4
 All four defendants were subsequently charged in a five-count indictment. Worrell was charged in Count One of the indictment for conspiracy to possess and distribute cocaine base, 21 U.S.C. Sec. 846, and in Count Five for possession with intent to distribute 313.7 grams of cocaine base, 21 U.S.C. Sec. 841(a)(1).
 
 
 5
 On December 7, 1992, Worrell entered a plea of guilty to both counts. At the plea hearing, the district court conducted the inquiry required by FED. R. CRIM. P. 11, and concluded that Worrell's plea was both voluntary and knowing. The establishment of the factual basis for the plea was deferred pending the trial of Worrell's codefendants.
 
 
 6
 At the plea hearing, Bell also pled guilty to various drug distribution charges. Pursuant to his plea agreement, Bell testified at the trial of Stewart and Williams about the existence of the drug conspiracy and the involvement of all four defendants. The jury found both Stewart and Williams guilty of conspiracy to distribute cocaine base.
 
 
 7
 Shortly after the trial of Stewart and Williams, Worrell's presentence report was issued. The report held Worrell responsible for the entire amount of drugs attributable to the conspiracy: 1648.74 grams of cocaine base. The report arrived at this total amount by combining the 112.1 grams sold to the undercover agent in the summer of 1992, 336.6 grams of cocaine base recovered at the Stewart residence after the arrest, 746.44 grams converted from $31,611.25 in currency and wire transfers recovered at the Stewart residence, and 453.6 grams of cocaine base that Bell sold to Harris from February to July of 1992. In response to an objection, the probation officer deleted the amount of drugs converted from the wire transfers, but left intact the amount of drugs converted from the seized currency.
 
 
 8
 At sentencing, Worrell again voiced his objection to the conversion of the seized currency into drug amounts for sentencing purposes. The district court agreed that this conversion resulted in double counting, and deleted this amount. Worrell also objected to the inclusion of the 453.6 grams that Bell sold to Harris on the ground that he was not the supplier of those drugs. Relying upon Bell's testimony at the trial of Stewart and Williams, the district court concluded that Worrell was the supplier of the drugs sold by Bell, and overruled the objection.
 
 
 9
 The court then determined that 1030.3 grams of cocaine base was attributable to Worrell, resulting in a total offense level of 34 after a two-level reduction for acceptance of responsibility.
 
 
 10
 The district court then considered the factual basis for Worrell's guilty plea. On the government's motion--and without objection by Worrell--the court used Bell's testimony and other evidence from the trial of Williams and Stewart as the factual basis for Worrell's plea. The court entered the guilty plea, and sentenced Worrell to 169 months of imprisonment plus five-years of supervised release. Worrell now appeals.
 
 II.
 
 11
 Worrell first challenges the validity of his guilty plea. His challenge is two-fold. First, he contends that the trial court violated FED. R. CRIM. P. 43(a) by using Bell's testimony in Stewart and Williams' trial to establish the factual basis for his plea. Rule 43(a) states that "[t]he defendant shall be present at ... the time of the plea...." FED. R. CRIM. P. 43(a). Worrell argues that because he was not "present" at the trial of Stewart and Williams, using evidence from the trial of his co-conspirators as the factual basis for his plea violated Rule 43(a).
 
 
 12
 This argument is meritless. Both Worrell and his attorney were present when the guilty plea was proffered, when the Rule 11 inquiry took place, and when the court decided to use Bell's testimony as the factual basis for Worrell's plea. Because he was present during the establishment of each essential element of his guilty plea, Rule 43(a) was not violated.
 
 
 13
 Second, Worrell contends that the court should not have used Bell's testimony to establish the factual basis because he did not have an opportunity to test the accuracy of that testimony. He concludes that self-serving testimony by a co-conspirator is insufficient to meet the mandate that "the court should not enter a judgment upon [a guilty] plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." FED. R. CRIM. P. 11(f).
 
 
 14
 We disagree. As a threshold matter, Worrell's objections to the use of Bell's testimony as a factual basis have been waived. Worrell was present when Bell's trial testimony was admitted as the factual basis of his plea. If he had any objections to the accuracy of that testimony, he should have raised them at that time. Having failed to do so, Worrell cannot now challenge the district court's consideration of Bell's testimony in its factual basis analysis. See United States v. Fant, 974 F.2d 559, 564-65 (4th Cir.1992); United States v. Williams, 684 F.2d 296, 301 (4th Cir.1982). Furthermore, "[b]y pleading guilty, [a defendant] relinquishe[s] his right ... to challenge the sufficiency of the evidence presented as a factual basis for his guilty plea." United States v. Willis, 992 F.2d 489, 491 (4th Cir.1993). A trial is the place to challenge the sufficiency of the state's evidence, and a trial is precisely what Worrell has freely chosen to forego.
 
 
 15
 In any event, the trial court had satisfied itself that a factual basis existed for defendant's plea. The court may use anything in the record to conclude that a factual basis exists. See United States v. DeFusco, 949 F.2d 114, 120 (4th Cir.1991). In this case, the court had been presented with overwhelming evidence that Worrell was part of a conspiracy to distribute cocaine base, including the presentence report, Bell's testimony, and other evidence from his co-defendants' trial. Therefore, we find that the district court acted well within its "wide discretion" in finding a factual basis to support the guilty plea. See United States v. Morrow, 914 F.2d 608, 611 (4th Cir.1990); see also DeFusco, 949 F.2d at 120.
 
 III.
 
 16
 Worrell next challenges the procedures used by the court in determining his sentence. Section 6A1.3(b) of the Sentencing Guidelines states that in cases where the sentencing factors are disputed, the court shall "notify the parties of its tentative findings and provide a reasonable opportunity for the submission of oral or written objections before imposition of sentence." U.S.S.G. Sec. 6A1.3(b). Worrell contends that the district court committed reversible error by failing to issue tentative findings concerning the contested drug amounts prior to the sentencing hearing.
 
 
 17
 We disagree. The district court is not required to issue tentative findings in all cases. See United States v. Walker, 901 F.2d 21, 22 (4th Cir.1990). In Walker, this court held that no tentative findings are necessary where the district court receives the defendant's objections in advance of the sentencing hearing, provides an opportunity for the parties to address those objections at the hearing, and resolves the factors before the imposition of the sentence. See id. Here, Worrell and his attorney received the presentence report and filed objections to the report prior to the sentencing hearing. At the hearing, the court heard arguments on all the objections and resolved them before imposing Worrell's sentence. Therefore, this case falls squarely within the holding of Walker, and the court did not err in failing to issue tentative findings prior to the sentencing hearing.
 
 IV.
 
 18
 Worrell next contends that the district court erred in considering Bell's trial testimony to resolve a disputed sentencing issue, namely whether Worrell should be held accountable for the amount of drugs that Bell sold to Harris. At sentencing, the court may consider any relevant information, regardless of its admissibility at trial, as long as the "information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. Sec. 6A1.3(a). Where the reliability of the evidence is disputed, the court should conduct an evidentiary hearing to determine its reliability. See United States v. Bowman, 926 F.2d 380, 381 (4th Cir.1991). According to Worrell, Bell's testimony is unreliable because it was given in return for a lighter sentence, and also because Worrell was not present at the trial to test its accuracy. Therefore, Worrell argues, the court's failure to conduct an evidentiary hearing before considering Bell's testimony constituted reversible error.
 
 
 19
 We find no merit in this argument. At sentencing, Worrell never objected to the reliability of Bell's testimony and did not request an evidentiary hearing. Because he did not dispute the reliability of the evidence at issue, the court had no obligation to hold an evidentiary hearing. See Bowman, 926 F.2d at 381 (stating that an evidentiary hearing is necessary only where the reliability of the evidence is "an issue"). Moreover, any hearing on the reliability of Bell's testimony would have been redundant. The district court had heard Bell's testimony in open court, observed Bell's demeanor first-hand, and witnessed the cross-examination of Bell. Therefore, the court already possessed the information necessary to determine the reliability of the evidence it used to resolve the sentencing question.
 
 V.
 
 20
 Worrell next challenges the district court's decision to hold him accountable for the drugs sold by Bell between February and July of 1992. Under Sec. 1B1.3(a)(1)(B) of the Sentencing Guidelines, a defendant is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. Sec. 1B1.3(a)(1)(B). When the attributable amount of drugs is disputed, the court must make an independent resolution of the disputed issue. See United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir.1993). Worrell contends that the district court erred by failing to make specific findings that Bell's distribution of 453.6 grams of crack between February and July of 1992 was both "reasonably foreseeable" by Worrell and within the scope of a "joint criminal activity."
 
 
 21
 However, the record shows that the district court carefully considered the evidence regarding Worrell's role in Bell's distribution of cocaine base from February to July 1992, and concluded that Worrell was involved in the distribution as "the supplier of those amounts." This conclusion was well-supported; the evidence at the trial of Stewart and Williams demonstrated that Worrell agreed to supply drugs to Bell for distribution for the first nine months of 1992. Because U.S.S.G. Sec. 1B1.3(a)(1)(B) is met when the government presents "evidence that the court deems sufficient to establish the quantity of drugs attributable to a defendant[,]" Gilliam, 987 F.2d at 1013, we find no error in the court's inclusion of the 453.6 grams of cocaine base in calculating Worrell's sentence.
 
 VI.
 
 22
 Worrell contends finally that the district court violated FED. R. CRIM. P. 32(a)(1)(A) by failing to ask him at sentencing whether he had seen and discussed the presentence report with counsel. The Rule requires that "[b]efore imposing sentence, the court shall ... determine that the defendant and defendant's counsel have had the opportunity to read and discuss the presentence investigation report ... or summary thereof...." The Rule does not require, however, that the district court expressly ask whether the defendant has read and discussed the report. "[O]ften a statement by counsel or defendant will unequivocally demonstrate that the report has been read and discussed by them, or court records may allow the district court to infer that defendant and defense counsel signed out the report and discussed it together." United States v. Miller, 849 F.2d 896, 898 (4th Cir.1988). For example, in United States v. Serino, 835 F.2d 924 (1st Cir.1987), the court reviewed the sentencing hearing transcripts, and inferred that "defendant and his counsel were abundantly familiar with the report" because "[c]ounsel made objections to specific portions of the report." Id. at 931. Relying upon this inference, the Serino court held that no 32(a)(1)(A) violation had occurred.
 
 
 23
 Here, the court had ample reason to believe that Worrell and his attorney had read and discussed the report. The probation officer mailed two copies of the report to Worrell's attorney one month before the sentencing hearing. Worrell filed objections to the report before the sentencing hearing. At the sentencing hearing, Worrell's attorney voiced his objections to the report and then stated that "[o]ther than that, Your Honor, we have no other objections to the presentence report as amended." Therefore, the court was justified in believing that Worrell and his attorney had read the presentence report, and did not err in failing to ask Worrell whether he had discussed it with his attorney.
 
 VII.
 
 24
 In sum, there is ample reason to conclude that Worrell is guilty of the counts to which he pled and that he was given a fair opportunity to challenge the recommendations in his presentence report. The judgment of the district court is
 
 
 25
 AFFIRMED.