66 F.3d 306
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Ganiyu BARUWA, Defendant, Appellant.
 No. 95-1209.
 United States Court of Appeals, First Circuit.
 Sept. 20, 1995.
 
 Mary June Ciresi on brief for appellant.
 Sheldon Whitehouse, United States Attorney, Margaret E. Curran and Charles A. Tamuleviz, Assistant United States Attorneys, on brief for appellee.
 Before SELYA, STAHL and LYNCH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellant Baruwa was convicted by a Rhode Island federal jury of eight counts of mail fraud, in violation of 18 U.S.C. Sec. 1341. He challenges his conviction on two of the counts, arguing that the mailings relied upon by the Government in support did not meet the statute's "in furtherance of the scheme" requirement, and therefore were insufficient to support his conviction. We disagree, and so affirm.
 
 
 2
 The evidence at trial, unchallenged in any way on appeal, revealed that Baruwa filed eight false personal injury claims against various insurance companies and businesses, based on a claimed slip and fall at each of the insured premises. For all the claims, the United States mails were used to carry claims-related materials and correspondence to or from Baruwa.
 
 
 3
 The heart of Baruwa's argument on appeal is that the two letters which form the basis of Counts Seven and Eight[1] of the indictment were not mailed in furtherance of the scheme to defraud, as required by statute, but rather were sent to him by investigators who regarded his claim as questionable. Each investigator testified, as to his respective letter, that it is sent only when a claim is suspicious. These letters, so the argument runs, did not further Baruwa's scheme because they were not sent as part of the routine processing of his claim, but were sent only because his claims were suspect.
 
 
 4
 There are two elements to the crime of mail fraud. "They are the defendant's participation in a scheme to defraud and the use of the mails, either by or caused by the [defendant], in furtherance of the scheme." U.S. v. Yefsky, 994 F.2d 885, 891 (1st Cir.1993).
 
 
 5
 For a mailing to be considered 'in furtherance of the scheme,' "the scheme's completion or the prevention of its detection must have depended in some way on the mailings." U.S. v. Pacheco-Ortiz, 889 F.2d 301, 305 (1st Cir.1989), quoting U.S. v. Silvano, 812 F.2d 754, 760 (1st Cir.1987)(internal quotation marks omitted.) The use of the mails need not be an essential element of the scheme; "[i]t is sufficient for the mailing to be 'incident to an essential part of the scheme,' ... or 'a step in the plot....' " Schmuck v. U.S., 489 U.S. 705, 710-11 (1989) (citation omitted.)
 
 
 6
 The relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time, regardless of whether the mailing later, through hindsight, may prove to have been counterproductive and return to haunt the perpetrator of the fraud. The mail fraud statute includes no guarantee that the use of the mails will be risk free. Those who use the mails to defraud succeed at their peril.
 
 
 7
 Id. at 715. Schmuck involved a scheme whereby defendant rolled back car odometers and resold the resulting low-mileage cars to retail dealers for ultimate resale to the public. The dealers submitted title application forms to the state on behalf of their customers. The Court agreed that these submissions satisfied the mailing element of the mail fraud offense, observing that "once the full flavor of Schmuck's scheme is appreciated," it became clear that "[t]he mailing of the title-registration forms was an essential step in the successful passage of title to the retail purchasers." Id. at 712, 714.
 
 
 8
 In U.S. v. Serino, 835 F.2d 924 (1st Cir.1987), we upheld defendant's conviction on five counts of mail fraud and rejected the argument that certain mailings between an attorney and the insurance company he represented were not in furtherance of the scheme "but rather hindered it, because they contained the Insurance Company's attorney's reservations about the validity of the claim." Id. at 928. We noted first that we have given a liberal construction to the language of the mail fraud statute. Id. In answer to Serino's specific argument, we said:
 
 
 9
 Our response is that the focus ought to be concerned less with the precise contents of the particular mailings than with the role those mailings played in the execution of the scheme to defraud. As long as the mailings are sufficiently related to the scheme so that the execution of the scheme depended on those mailings being sent, the proper nexus is established.
 
 
 10
 Id. at 928-29.
 
 
 11
 More recently, we upheld a mail fraud conviction in an insurance context against the argument that an insurer's letter, acknowledging receipt of a claim for the theft of an automobile, was not part of the scheme to defraud. We said that while the acknowledgement letter itself did not involve any deception, it "was 'incidental' to an essential element in the scheme, namely, the criss-cross of mailings that would reasonably be expected when false claims are submitted to insurance companies, are processed, and are ultimately paid, thereby making the fraud successful." U.S. v. Morrow, 39 F.3d 1228, 1237 (1st Cir.1994), cert. den., 115 S.Ct 1421 (1995); see also U.S. v. Contenti, 735 F.2d 628, 631 n. 2 (1st Cir.1984) (mailing is incident to an essential part of a scheme where it is ' "a normal concomitant of a transaction that is essential to the fraudulent scheme,' " quoting U.S. v. Lea, 618 F.2d 426, 431 (7th Cir.1980)).
 
 
 12
 Our cases, therefore, reflect that even a mailing which expresses some doubt about the validity of a claim can satisfy the mail fraud statute if the mailing is sufficiently related to the scheme: if execution of the scheme depends on the mailing being sent. Other Circuits have so held.
 
 
 13
 In U.S. v. Draiman, 784 F.2d 248 (7th Cir.1986), defendant challenged the Government's reliance on letters from the insurance company's attorney to his business attorney indicating that the proofs of loss and supporting documentation were not sufficient, and requesting clarification. "Draiman argues that these mailings conflicted with his scheme rather than furthered it. If in fact the letters did conflict rather than promote the scheme, they would not qualify.... The distinction is that Draiman was continuing to try to collect, and these letters helped give him another chance." Id. at 253.
 
 
 14
 U.S. v. McClelland, 868 F.2d 704 (5th Cir.1989) is instructive, too. There, the indictment was based in part on a report from an insurance adjuster to the insurance company's claim department. In addition to routine claims information, the report reflected facts that would lead the claims department to suspect arson, and to focus suspicion on the defendant. The Fifth Circuit upheld reliance on the report, finding that it:
 
 
 15
 was not for the sole purpose of defeating [defendant's] claim. Most of the facts contained in [the] report are routinely used by insurers in making decisions on whether and how much to pay on an insurance claim. Consequently, [this] interim report was a customary step in processing an insurance claim. The jury was entitled to conclude that this mailing furthered [defendant's] scheme to collect on his fraudulent insurance claim.
 
 
 16
 Id. at 708-09.
 
 
 17
 Baruwa's scheme was to claim he had suffered injury at different insured premises. Appellant's Brief, p. 2. His objective was to collect proceeds from the insurers of the premises. Id. His claims set in motion a predictable flurry of paper, a "criss-cross of mailings." That the mailings were sent as a result of the suspicions of the insurers is not decisive here; it is obvious that mailings such as these, seeking information about Baruwa's claims and injuries, were clearly incidental, even critical, to the success of his scheme. "Success of his plan, were it to result, would depend on the sending and receipt of precisely those claim documents and supporting documentation that were in fact sent...." Serino, 835 F.2d at 929. Accordingly, we conclude that the letters relied on in support of Counts Seven and Eight of the indictment were sufficient to satisfy the statute. Baruwa's conviction is affirmed.
 
 
 
 [1]
 The letter in support of Count Seven was from Roy A. Prout, Investigator for Constitution State Service Company, the claims handler for Woolworth, Inc. The letter stated, in essence, that an investigation was ongoing to determine the circumstances of the accident, and the extent and severity of injury. It advised Mr. Baruwa that his cooperation was necessary, and that he would need to provide a recorded statement and documentation of injuries
 The letter in support of Count Eight was from Michael J. Stack, Special Investigator for Liberty Mutual. This letter identified Mr. Stack as the claim's investigator, and requested Mr. Baruwa to contact him to discuss the claim.