UNITED STATES of America, Appellee,

v.

Joseph CRUZ, Defendant, Appellant.

No. 91–1047.

United States Court of Appeals,
First Circuit.

Argued June 5, 1992.

Decided Dec. 18, 1992.

William A. Brown, Boston, MA, for defendant, appellant.

Jeffrey A. Locke, Asst. U.S. Atty., with whom A. John Pappalardo, U.S. Atty., and Geoffrey E. Hobart, Asst. U.S. Atty., Boston, MA, were on brief, for appellee.

Before CYR, Circuit Judge, RONEY,[*] Senior Circuit Judge, and PIERAS,[**] District Judge.

CYR, Circuit Judge.

Joseph Cruz appeals his conviction on one count of conspiring to possess heroin, with intent to distribute, within 100 feet of a public playground in violation of 21 U.S.C. §§ 846, 841(a)(1) and 845a, and on two counts of possessing heroin, with intent to distribute, within the same environs in violation of 21 U.S.C. §§ 841(a)(1) and 845a.[1] Appellant questions the sufficiency of the evidence and challenges the sixty-three month prison sentence imposed by the district court. We affirm the judgment of conviction and sentence, but remand to the district court to permit modification of its sentencing memorandum and compliance with Fed.R.Crim.P. 32(c)(3)(D).

I

BACKGROUND

In April 1990, the United States Drug Enforcement Agency ("DEA") and the Lowell Police Department launched an investigation into suspected heroin distribution at the residence of appellant's brother, Dennis Cruz, who occupied the first floor of a two-family dwelling abutting a public playground in Lowell, Massachusetts. The DEA enlisted the aid of a cooperating individual, Esmiraldo Ruiz, Jr., who purchased heroin at the residence on six occasions.

[*] Of the Eleventh Circuit, sitting by designation.

[**] Of the District of Puerto Rico, sitting by designation.

1. Section 845a has been transferred to 21 U.S.C. § 860 (Supp.1992) and now criminalizes such drug-related conduct within 1000 feet of a public playground.

The investigation led to the indictment of appellant Joseph Cruz on one count of conspiring to possess heroin for distribution within 100 feet of a public playground (count one) and six counts of possessing heroin for distribution within 100 feet of a public playground (counts two through six and count eight). Appellant was acquitted of the charges in counts two, three, six and eight.

█ As appellant disputes the sufficiency of the evidence, we relate it in the light most favorable to the challenged verdicts, with a view to whether a rational juror fairly could have found guilt beyond a reasonable doubt. *See United States v. Tejeda,* 974 F.2d 210, 212 (1st Cir.1992) (citing *United States v. Ortiz,* 966 F.2d 707, 711 (1st Cir.1992), and *United States v. Vargas,* 945 F.2d 426, 427–28 (1st Cir.1991)).

The investigation began on April 5, 1990. Esmiraldo Ruiz, Jr. testified that he arrived at the Dennis Cruz residence with $1,800 in DEA cash and spoke briefly with Dennis Cruz, who instructed him to give the money to appellant Joseph Cruz. Ruiz testified that he handed the money to appellant, who allegedly counted it and then conducted a pat-down weapon search of Ruiz. Ruiz alleged that appellant handed him 100 "bags" or "squares," later determined to contain 4.8 grams of heroin.[2]

On April 20, Ruiz visited the Dennis Cruz residence a second time, with $3,600 in DEA cash and a radio transmitter. The ensuing conversation was not received by law enforcement agents, however, because of a malfunction in the transmitter. Ruiz testified that he told appellant, who was in the yard when Ruiz arrived, that he wanted to buy more heroin. Appellant allegedly summoned brother Dennis, who led Ruiz to the basement and accepted the $3,600. Ruiz testified that appellant then went upstairs to the first floor apartment. Several minutes later, appellant allegedly entered the basement and handed Ruiz 200 bags,

later found to contain 12.8 grams of heroin.[3]

On April 27, Ruiz arrived at the Dennis Cruz residence carrying $3,600 in DEA cash and a functioning transmitter disguised as a beeper. Dennis Cruz directed Ruiz to the basement of the house, where he encountered appellant, gave him the $3,600, and received 200 bags containing 13.8 grams of heroin. As Ruiz was leaving the basement, he overheard Dennis instructing appellant and another individual to follow Ruiz to the train station. A DEA agent, posing as a taxi driver, waited for Ruiz at the curb and drove him to the train station. The agent identified appellant Joseph Cruz as one of the individuals who followed the DEA agent's vehicle to the train station and watched while Ruiz purchased a train ticket. The April 27 transaction formed the basis for count four, on which appellant was convicted.

The next transaction took place on May 3. The DEA again utilized the beeper/transmitter device, but also conducted video surveillance of the rear of the Dennis Cruz residence. The DEA provided Ruiz with $3,600 and transported him in a taxi to the Dennis Cruz residence, where he met appellant in the yard and said he wanted to buy 200 bags of heroin. When Dennis arrived, appellant left the yard and went to the first floor apartment. At Dennis' instruction, Ruiz let the taxi go. Ruiz gave the cash to Dennis, and a few minutes later appellant returned and handed Ruiz 200 bags containing 12.6 grams of heroin. Dennis and appellant then drove Ruiz to the train station. The May 3 transaction formed the basis for count five, on which appellant was convicted.

The next transaction took place on May 8, under audio and video surveillance. Dennis Cruz and his wife drove Ruiz from the train station to the Cruz residence. Dennis provided Ruiz with 400 bags of heroin in exchange for $6,000 in DEA cash. Later analysis established that the bags contained 24.6 grams of heroin. At trial, a

---

**2.** The April 5 transaction formed the basis for the substantive offense charged in count two. Appellant was acquitted at trial.

**3.** The April 20 transaction formed the basis for count three. The jury acquitted appellant at trial.

DEA agent identified appellant as the person who was depicted in the videotape closing the basement door after the transaction took place; however, Ruiz testified on cross-examination that appellant was not directly involved in the May 8 transaction.[4]

On May 15, the sixth and final transaction was consummated, when Ruiz purchased 218 bags of heroin from Dennis Cruz for $3,270, while under DEA audio and video surveillance. The bags contained 13.7 grams of heroin.[5]

On May 18, search and arrest warrants were executed at the Cruz residence. Above the ceiling tiles in the unoccupied apartment on the second floor, the police discovered 1,423 bags of white powder containing 80.3 grams of heroin. Two cots were found in a basement bedroom. Personal papers and identification belonging to appellant were found on one cot, beneath which was a brown paper bag filled with empty yellow bags identical to those found filled with white powder in the unoccupied second floor apartment. A set of scales also was found in the basement. The Dennis Cruz apartment on the first floor contained police scanners, walkie-talkies, beepers, and a clear plastic bag filled with rubber bands and tied to two boxes of clear plastic baggies. Dennis Cruz and another individual were arrested. Appellant was not at the Cruz residence on the day of the search, but was arrested several days later.[6]

## II

## DISCUSSION

### A. *Sufficiency of the Evidence*

#### 1. Substantive Offenses

■ Appellant challenges the sufficiency of the evidence supporting the substantive offenses charged in counts four and five. He says he was a "passive bystander" at the Dennis Cruz residence, present only by

**4.** The May 8 transaction formed the basis for count six, on which the court directed a verdict of acquittal.

**5.** The May 15 transaction formed the basis for count seven, in which appellant was not named.

virtue of his fraternal relationship with Dennis. As "mere presence" is insufficient to support a conviction, *United States v. Mehtala,* 578 F.2d 6, 9 (1st Cir.1978), appellant argues that the jury verdicts on the substantive counts cannot stand. We do not agree.

The trial evidence revealed more than "mere presence." It revealed that appellant was an active participant in the substantive offenses charged in counts four and five, as clearly stated by Ruiz at trial, corroborated by the DEA agent, reflected in the transcripts of recorded conversations, and even depicted on videotape. Indeed, the evidence came close to admitting of no other interpretation than that given it by the jury.

#### 2. Conspiracy

Appellant likewise challenges the sufficiency of the evidence supporting the conspiracy conviction under count one, claiming that because he was not implicated in the conspiracy at the time of its alleged commencement on April 5, and because he was acquitted of the substantive offenses charged in counts two, three, six and eight, he lacked the requisite specific intent.

■ A sustainable conspiracy prosecution requires proof beyond a reasonable doubt that the conspirators intended to agree and to commit whatever substantive criminal offense may have been the object of their unlawful agreement. *Tejeda,* 974 F.2d at 212; *United States v. Lopez,* 944 F.2d 33, 39 (1st Cir.1991); *United States v. Sanchez,* 917 F.2d 607, 610 (1st Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1625, 113 L.Ed.2d 722 (1991). The illicit agreement may be "express or tacit" and may be proven by direct or circumstantial evidence. *United States v. Rivera–Santiago,* 872 F.2d 1073, 1079 (1st Cir.1989), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989). *See also Tejeda,* 974 F.2d at 212; *Sanchez,* 917 F.2d at 610.

**6.** The May 18 search formed the basis for count eight. The court directed a judgment of acquittal as to appellant.

Appellant overlooks the direct and circumstantial evidence underlying the well-grounded guilty verdicts on the substantive charges in counts four and five, *see supra* at Pt. II.A.1, which was ample to establish the conspiracy alleged in count one and appellant's membership in it. The government was not required to prove that appellant knew about, or took part in, all aspects of the conspiracy, *Rivera–Santiago*, 872 F.2d at 1079 (proof of "the essential nature of the plan and [the defendant's] connection[ ] with it" is enough) (quoting *Blumenthal v. United States*, 332 U.S. 539, 557, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947)), but only that appellant intended to agree with a co-conspirator to possess heroin, for distribution, within 100 feet of a public playground.[7] We conclude that a rational jury could have found, beyond a reasonable doubt, that appellant was a member of the criminal conspiracy alleged in count one.

## B. *Sentencing*

### 1. 18 U.S.C. § 3553(c)

At the heart of the guideline sentencing appeal is appellant's professed con-fusion as to the guideline sentencing range ("GSR") the district court settled upon and whether it determined that a minimum five-year prison term was mandated on the conspiracy conviction under count one, pursuant to 21 U.S.C. §§ 846(a), 841(b)(1) and 845a, as stated in the PSR. Appellant argues that sentence was imposed in violation of the statutory requirement that the sentencing judge "state in open court the reasons for ... impos[ing] ... the particular sentence." 18 U.S.C. § 3553(c). In arriving at its determination as to the applicable GSR, the sentencing court must make "reasonably specific findings." *United States v. McDowell*, 918 F.2d 1004, 1012 (1st Cir.1990). Our review of the sentencing transcript reveals that the district court findings met the minimum requirements of section 3553(c) by the narrowest margin.

At sentencing, the government expressly predicated its sentencing recommendation on the presentence report ("PSR"), which sets forth the amount of heroin involved as follows:

| Count | Date | Net Weight |
|-------|----------|------------|
| 2 | 04/05/90 | 4.8 gr. |
| 3 | 04/20/90 | 12.8 gr. |
| 4 | 04/27/90 | 13.8 gr. |
| 5 | 05/03/90 | 12.6 gr. |
| 6 | 05/08/90 | 24.6 gr. |
| 7 | 05/18/90 | 80.3 gr. |

The PSR did not recommend that appellant be held responsible for all these amounts, but proposed to exclude the 80.3 grams involved in count eight, which did not name appellant. The PSR proposed to set the base offense level at 22, based on the following drug quantity calculation:

> The defendant is being held accountable for 68.6 grams of heroin, which is the total amount of drugs included in counts 2 through 6. The defendant was not present when the drugs and weapons were seized on 5/18/90, so these drugs and weapons are not being included when calculating his offense level. As per the drug quantity table at 2D1.1, 60 to 80 grams of heroin receives a base offense level of 22.

The PSR proposed a two level increase, pursuant to U.S.S.G. § 2D1.2(a)(1), for

---

7. Moreover, under 21 U.S.C. § 846 there is no requirement that the government prove any overt act as an element of the crime of conspiracy. *United States v. Paiva*, 892 F.2d 148, 155 (1st Cir.1989); *United States v. Williams*, 809 F.2d 75, 80 (1st Cir.1986), *cert. denied*, 481 U.S. 1030, 107 S.Ct. 1959, 95 L.Ed.2d 531 and *cert. denied*, 481 U.S. 1072, 107 S.Ct. 2469, 95 L.Ed.2d 877 and *cert. denied*, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 377 (1987). Thus, acquittals on the other substantive counts in no way precluded appellant's conspiracy conviction.

drug crimes occurring near a protected location. It proposed another two level increase for obstruction of justice, based on allegations that appellant intimidated a witness during trial. Thus, the PSR recommended a total adjusted offense level of 26 and a criminal history category of I, which would yield a 63–to–78 month GSR.

At the sentencing hearing, the 78–month sentence recommended by the government tracked the computation proposed in the PSR. Defense counsel urged the district court to reject the two level increase for obstruction of justice; the government objected. The court asked what the effect would be if the proposed two level increase were eliminated. Government counsel responded that the offense level would drop to 24, which would "reduce the range that the Court would consider from 63 to 78 months down to *51 to 63 months.*" (Emphasis added.) The court then stated, "I am not going to raise it by two points. In other words, I will drop it down. So, *we are dealing with that range* as *you just described.*" (Emphasis added.)

Defense counsel next contended that the defendant was not accountable for any heroin beyond the 26.4 grams sold on April 27 and May 3 (counts four and five) because he was either acquitted or not charged under the other counts. In response, the court inquired, "You're asking me to ignore the conspiracy?" Defense counsel complained that the defendant was being sentenced as if he had been convicted on all counts. The court correctly explained that conviction of a substantive offense is not a prerequisite to a conspiracy conviction. Apparently overlooking the two level increase proposed in the PSR for drug offenses committed near a public playground, *see* U.S.S.G. § 2D1.2(a)(1), defense counsel suggested that the adjusted offense level would total only 22 even if the recommendations in the PSR were adopted. The government responded that the mandatory minimum sixty-month prison sentence prescribed by 21 U.S.C. § 841(b)(1)(B) was applicable by reason of appellant's conviction under count one, which alleged a conspiracy to possess 100 or more grams of heroin, with intent to distribute. Without further findings or comment, the district court sentenced appellant to sixty-three months in prison and a ten-year term of supervised release.

Thus, the sentencing hearing transcript indicates that the district court adopted the guideline sentencing calculation recommended in the PSR, with the exception of the two level increase for obstruction of justice, which the court expressly rejected. The applicable GSR, therefore, was 51–to–63 months and the court sentenced appellant at the top of the range. As the sentencing transcript clearly reflects that the court and the parties focused primary attention on the PSR, we are able to determine from the transcript and the PSR that the minimum requirements of section 3553(c) were met. *See United States v. Schultz,* 970 F.2d 960, 963 n. 7 (1st Cir. 1992) (finding minimal compliance with § 3553(c) where PSR was central focus at sentencing and provided sufficient basis for reasoned appellate review).

### 2. Criminal Rule 32(c)(3)(D)

■ Relying on Federal Rule of Criminal Procedure 32(c)(3)(D), appellant insists that the district court did not resolve all the matters in controversy at sentencing, particularly appellant's contentions that he was not involved in the conspiracy and that he was not responsible for the 80.3 grams of heroin seized at the Dennis Cruz residence on May 18.

The contention that appellant was not involved in the conspiracy (or that the sentencing court failed to so determine) is frivolous. As previously discussed, *see supra* at Pt. II.A.2, there was ample evidence to support the conspiracy conviction under count one. Furthermore, in rejecting defense counsel's contention at sentencing that Cruz could not be held responsible for more than 26.4 grams of heroin, the district court expressly adverted to the conspiracy. *See supra* at p. 618.

Although appellant stipulated at trial to the heroin quantities involved in the various counts, not including the conspiracy charge alleged in count one, throughout

the proceedings he vigorously denied responsibility for any quantity of heroin beyond the 26.4 grams involved in the substantive offenses charged in counts four and five. Thus, appellant argues that the district court should have determined the amount of heroin for which he was responsible for sentencing purposes.

"A court may make 'implicit' findings on disputed factual questions by accepting the government's recommendations at the sentencing hearing." *United States v. Wells Metal Finishing, Inc.*, 922 F.2d 54, 58 (1st Cir.1991) (citing *United States v. Gerante*, 891 F.2d 364, 367 (1st Cir.1989)). The court below did not make an explicit finding that appellant was responsible for 68.6 grams of heroin. Nevertheless, our reconstruction of its sentencing calculus, *see supra* p. 618, reveals that the district court implicitly adopted the total adjusted offense level proposed in the PSR, except for the two level adjustment for obstruction of justice. Moreover, the court's imposition of the sixty-three month sentence obviously constituted a rejection of the contention that appellant should not be held responsible for more than 26.4 grams of heroin; attribution of 26.4 grams would have resulted in a total adjusted offense level of 20, including the two level increase required under U.S.S.G. § 2D1.2(a)(1) (drug offense near public playground), yielding a 33–to–41 month GSR. It is no less plain that the

court implicitly rejected the government's argument that appellant was responsible for 100 or more grams of heroin, for which the applicable offense level would have been 28, yielding a 78–to–97 month GSR.[8]

Although the district court implicitly resolved the drug quantity dispute, it did not attach a written record of its findings to the PSR as required by Rule 32(c)(3)(D); a requirement with which we have insisted upon literal compliance. *See United States v. Geer*, 923 F.2d 892, 897 (1st Cir.1991). Noncompliance with Criminal Rule 32(c)(3)(D) does not automatically entitle appellant to resentencing, however; in some cases no more is required than a remand to the sentencing court for appropriate findings. *United States v. Serino*, 835 F.2d 924, 932 (1st Cir.1987); *see United States v. Santana–Camacho*, 931 F.2d 966, 970 (1st Cir.1991). We believe this to be such a case. On remand, a written record of the court's findings as to the quantity of heroin for which appellant is responsible shall be made and attached to the PSR.

### 3. Criminal Rule 32(a)(1)(A)

Appellant maintains that Federal Rule of Criminal Procedure 32(a)(1)(A) required the district court to inquire at sentencing whether appellant had read the PSR and discussed it with counsel.[9] According to First Circuit precedent, however,

---

**8.** Similarly, the government's request that the court apply the five-year mandatory minimum prison term requirement under 21 U.S.C. § 841(b)(1) (for heroin offenses involving 100 grams or more) was rejected. Furthermore, the PSR's statement that the five-year minimum sentence requirement was applicable is unfounded. Under the statutory scheme, subsection 841(a)(1) sets forth the elements of a substantive offense, without reference to drug quantity:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance ...

21 U.S.C. § 841(a)(1). Subsection 841(b), which is "but a penalty provision and not an offense or an element thereof," *United States v. Rule*, 905 F.2d 497, 499 (1st Cir.1990); *see also United States v. McHugh*, 769 F.2d 860, 868 (1st Cir. 1985), mandates specific minimum prison sen-

tences for violations of section 841(a) involving various drug quantities.

The PSR is patently inconsistent as concerns the applicability of a subsection 841(b) mandatory minimum sentence. Under the heading "Sentencing Options," the PSR states that "[t]he term of imprisonment on Count One (1) is a five (5) year minimum mandatory up to eighty (80) years, per [21 U.S.C. §§ 846, 841(b)(1) and 845a]." Elsewhere, the PSR recommends that appellant be held responsible for 68.6 grams of heroin, an amount insufficient to trigger the five-year mandatory minimum sentencing provision in subsection 841(b)(1)(B). In light of the sixty-three month sentence imposed by the court, however, any error in the PSR appears to have been harmless.

**9.** Criminal Rule 32(a)(1)(A) states: "Before imposing sentence the court shall ... determine that the defendant and defendant's counsel have had the opportunity to read and discuss the presentence investigation report...." Fed. R.Crim.P. 32(a)(1)(A).

**620**

it is enough that the court determine that the defendant and counsel have had an opportunity to read and discuss the report.[10] *Serino,* 835 F.2d at 931. *See also United States v. Manrique,* 959 F.2d 1155, 1157 (1st Cir.1992). Under our cases, a new sentencing hearing will not be required as long as it is clear from the record that the defendant and defense counsel were familiar with the PSR. *Manrique,* 959 F.2d at 1157; *see Serino,* 835 F.2d at 931. In *Serino,* for example, we determined that the objections defense counsel asserted at sentencing to particular portions of the PSR demonstrated that the defendant and counsel were "abundantly familiar with the report." *Id.* Similarly, in *Manrique,* we found defense counsel's statement—"with regard to the Presentence Report and the government's version therein the defendant virtually has adopted the government's version"—sufficient to establish that counsel had read the PSR and discussed its contents with the defendant. 959 F.2d at 1158.

■ In an addendum to appellant's PSR in the present case, the probation officer certified that the PSR had been disclosed to defense counsel. The sentencing transcript reveals that defense counsel's statements at sentencing related, for the most part, to the drug quantity calculations in the PSR. Moreover, prior to sentencing, defense counsel filed written opposition to the PSR, setting forth the defendant's objections to the drug quantity calculations by reference to specific paragraphs in the PSR. As the record well establishes that defense counsel was intimately familiar with the PSR,[11] we will not assume that defense counsel did not discuss so critically important a document with his client, especially since appellant claims no such dereliction.

### 4. Sentencing Memorandum

The government concedes that the Memorandum of Sentencing Hearing and Report of Statement of Reasons ("sentencing memorandum") contains a number of errors. First, it incorrectly reflects that there were no factual or legal issues in dispute and that no dispute existed as to the application of the sentencing guidelines. It sets out the following "tentative findings":

Total Offense Level: 26

Criminal History Category: I

63 to 78 months imprisonment

120 months supervised release

It then states incorrectly that these tentative findings were adopted by the court since there was no objection. On remand, the sentencing memorandum shall be amended to reflect the applicable GSR as determined by the court, the existence and nature of the dispute relating to the drug quantity, and the district court's resolution of the dispute.

*We affirm the judgment of conviction and sentence. The case is remanded to the district court to permit modification of its sentencing memorandum and compliance with Fed.R.Crim.P. 32(c)(3)(D) in accordance herewith.*

**10.** Nonetheless, and for obvious reasons (the present claim among them), " 'it is the better practice for trial courts to address the defendant directly in order to establish that he or she has had the opportunity to read the [PSR] and to discuss it with ... counsel.' " *United States v. Manrique,* 959 F.2d 1155, 1157–58 (1st Cir.1992) (quoting *United States v. Mays,* 798 F.2d 78, 80 (3d Cir.1986)). In the Memorandum of Sentencing Hearing and Report of Statement of Reasons ("sentencing memorandum"), the dis-

trict court did indicate that the PSR had been reviewed by counsel and the defendant.

**11.** For example, the objections included statements that "[i]t is the defendant's contention that the 104.9 grams of heroin have to be excluded in the computation," and that "the defendant believes that based on an examination of the drug table ... that the base offense level should have been a level 18."