USCA1 Opinion

 

 December 1, 1995 [NOT FOR PUBLICATION] [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1968 UNITED STATES OF AMERICA, Appellee, v. WILFREDO JIMENEZ-RODRIGUEZ, Defendant, Appellant. ____________________ No. 94-2072 UNITED STATES OF AMERICA, Appellee, v. FRANCISCO REYES-VEJERANO, Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ____________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ ____________________ Rafael F. Castro Lang for appellant Francisco Reyes-Vejerano. _____________________ Rachel Brill with whom Carlos V. Garcia Gutierrez was on brief _____________ ___________________________ for appellant Wilfredo Jimenez-Rodriguez. Sidney M. Glazer, Senior Appellate Counsel, Criminal Division, _________________ Department of Justice, with whom Guillermo Gil, United States ______________ Attorney, was on brief for the United States. ____________________ ____________________ BOUDIN, Circuit Judge. In January 1994, a federal grand _____________ jury indicted three men on drug-related offenses: Francisco Reyes Vejerano, Wilfredo Jimenez Rodriguez and Jaime Ocampo Ochoa. Ocampo pleaded guilty to one count, and his sentence was subsequently affirmed by this court in United States v. _____________ Ocampo, No. 94-1897, 1st Cir. May 8, 1995. Reyes and Jimenez ______ pled not guilty and were tried together in April 1994. Both were convicted, and they now appeal. Reyes and Jimenez were each convicted on two related conspiracy charges, one to distribute heroin, 21 U.S.C.  841, 846, and the other to make false statements in an application for a passport, 18 U.S.C. 1542, in order to secure a false travel document for a drug courier. Reyes was also convicted of three counts of possession with intent to distribute heroin, 21 U.S.C. 841, for specific drug transactions related to the conspiracy. Reyes was sentenced to 188 months' imprisonment and a $50,000 fine, and Jimenez to a 33-month term of imprisonment. On this appeal, Reyes and Jimenez have filed over 100 pages of briefs, together making several dozen claims of error. Most of these claims involve matters largely within the scope of the trial court's discretion or claims where no proper objection was taken. We direct most of our discussion to those few issues that seem to us fair ground for argument under the applicable standards of review and, in closing, -3- -3- illustrate why the balance of the claims do not merit detailed discussion. 1. Although the government offered ten witnesses, the brunt of its case rested on the testimony of Carmen Toledo Gonzalez who, by her own admission, had participated in both of the conspiracies and engaged in several of the drug transactions and the attempted passport fraud. Her evidence was bolstered by that of her boyfriend (Jeffrey Martinez) who also participated in certain of the events. Their testimony, with some gaps filled in by other witnesses, permitted the jury to conclude that Reyes and Ocampo were responsible for several efforts to import heroin into Puerto Rico. As to Reyes, the details need not be recounted since he does not deny that the evidence against him was adequate to convict. Crediting the government witnesses, the case against Reyes was a strong one. Toledo herself made two trips, one in October 1992 to Colombia and one in 1993 (apparently in June) to Panama; and she helped recruit two other individuals for separate trips, both to Colombia in 1993. These trips took place after consultation with Reyes, or so the jury was entitled to find. Some drugs were successfully imported, one effort resulted in an airport arrest, and one fell through because the drugs were not delivered to the courier. -4- -4- By contrast, Jimenez--whose role was far more limited-- argues that the government failed to prove the existence of a single conspiracy to possess heroin as charged in the indictment and that in any event it failed to show that Jimenez joined such a conspiracy. The evidence certainly permitted the jury to find that Reyes, Ocampo and Toledo were members of one drug trafficking conspiracy. The finding was supported by similarities in the participants, methods, geographic locations, and the like. See United States v. ___ ______________ Morrow, 39 F.3d 1228, 1233-34 (1st Cir. 1994); United States ______ _____________ v. Cloutier, 966 F.2d 24, 28 (1st Cir. 1992). ________ The more difficult question is whether Jimenez, who participated in only one of the trips, could fairly be found to have joined the charged conspiracy, or any drug conspiracy at all. The two issues are significantly different, and we address the latter one first. Taking the evidence in the light most favorable to the verdict, the jury could reasonably have found that the following occurred: After Toledo's passport was seized by police in an unrelated incident, Reyes and Ocampo gave Toledo identification papers to help her obtain a new passport under the name of Sarah Luz Velazquez Santiago. When Martinez declined to accompany Toledo on another trip, Toledo persuaded Jimenez to act as her escort, telling him that she was going to bring in narcotics and that she was asking him -5- -5- to help. Before departing, Toledo applied for a passport in the name of Sarah Luz Velazquez; Jimenez accompanied her to the passport office; and he there signed a document identifying Toledo as Sarah Luz Velazquez. No passport was obtained, and Toledo changed the destination from Colombia to Panama. Jimenez then accompanied Toledo to Panama. He had been selected because he was a book importer, and it was thought that his legitimate business travels would provide cover for the scheme. There was some evidence that Jimenez sought to distance himself from the importation efforts, but other evidence that he requested (unsuccessfully) a third of "what was coming" and that, for the return trip to Puerto Rico, Jimenez made arrangements to make it "look like it was a [trip] having to do with books." Toledo alone collected the drugs in Panama and carried them back to Puerto Rico in the company of Jimenez. Jimenez' assistance was certainly limited, and it was open to him to argue that his role was too equivocal to justify conviction. But the jury was entitled to find that the facts were as Toledo represented them. Further, an illegal agreement need not be explicit, Ianelli v. United _______ ______ States, 420 U.S. 770, 777 n.10 (1975); United States v. Ruiz, ______ _____________ ____ 905 F.2d 499, 506 (1st Cir. 1990), and a rational jury could conclude that Jimenez' participation was sufficient to make -6- -6- out an agreement. Jimenez was not helped by the fact that the evidence clearly showed his participation in the ancillaryconspiracy tosecurea passportbasedon falsedocuments. Assuming that the evidence allowed the jury to convict Jimenez of the heroin conspiracy, the question remains whether he joined the overarching conspiracy to import drugs as charged in the indictment or only a smaller encompassed conspiracy related to the specific Panama transaction. A conspirator can be part of a larger conspiracy without knowledge of all its details and dimensions. Blumenthal v. __________ United States, 332 U.S. 539, 557 (1947); United States v. _____________ _____________ Cruz, 981 F.2d 613, 617 (1st Cir. 1992). Still, on the ____ present facts there is a reasonable argument (which we need not resolve) that Jimenez, in addition to the passport conspiracy, was at worst knowingly engaged only in a single narrow conspiracy to import drugs on one occasion. Nevertheless, the evidence (as already noted) was sufficient to find that Jimenez conspired to possess heroin with intent to distribute in connection with the Panama episode; and the prosecution made clear at trial that he had not yet joined the conspiracy at the time of the prior acts of importation. Jimenez was sentenced based only on the 250 grams of heroin imported with his assistance; in fact, the trial court generously based Jimenez' sentence on one-third of that amount, in view of the testimony that he had asked to -7- -7- be given one-third of the drugs Toledo was to procure. Thus, Jimenez has not demonstrated prejudice as a result of the possible variance between the scope of the broader drug conspiracy charged and narrower drug conspiracy that was adequately proved. United States v. Morrow, 39 F.3d at 1235. _____________ ______ In a different variance argument, Jimenez protests that the indictment charged that the conspiracies were alleged to have continued to April 1993 (as to the heroin conspiracy) and until "on or about April 1993" [sic] (in the case of the passport conspiracy). In reality, the second application for the passport occurred in June 1993, and the Jimenez trip to Panama occurred shortly thereafter. But the indictment also identified as an overt act Jimenez' false identification of Toledo and said correctly that it occurred "on or about June 7, 1993." There is no indication that Jimenez was misled by the mistaken reference to his trip as one that occurred in April. Again there was no showing of prejudice.  2. Reyes argues that his sentence was substantially enhanced from a base level of 32 to one of 36, because the district court proposed a four-level increase under U.S.S.G. 3B1.1(a). This section provides that a four-level increase, for an aggravating role, should be imposed "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive . . . ." The pre-sentence report -8- -8- recommended that Reyes be deemed a leader-organizer on the ground that in addition to Reyes there were at least five other participants in the criminal activities, namely, Jaime Ocampo, Carmen Toledo, Jeffrey Martinez, Lourival Quinones and Wilfredo Jimenez. At the sentencing hearing, Reyes' counsel argued that Reyes and Ocampo had passed polygraph tests showing that they were not involved in drug trafficking and that other evidence showed that Toledo had lied at various points in her testimony. The district court, although it referred to the jury verdict, made clear that the court was making an independent judgment as to whether the facts supported the four-level increase. The court then imposed the four-level increase but on slightly different grounds than those suggested in the pre-sentence report. The district judge said although he might treat Martinez and Jimenez as participants, he was declining to do so; but that there were still the necessary five participants comprised of Reyes, Ocampo, Toledo, Quinones and an individual referred to at trial as "Negro." Alternatively, the court concluded that the criminal activity was "otherwise extensive"; under the explicit language of the guideline which uses the word "or," criminal enterprise of fewer than five would still be the basis for a four-level increase. U.S.S.G. 3B1.1.(a) -9- -9- On appeal, Reyes continues to argue that the polygraph tests, and other information inconsistent with Toledo's version of events, undermines the district court's finding. The difficulty is that the district court, like the jury, was entitled to accept Toledo's version. While some of the information relied on by Reyes to impeach the verdict was not before the jury (e.g., the polygraph test), most of the ____ evidence was considered by the jury and much is self-serving statements by other participants or impeachment material. The district court's decision to believe Toledo was not clearly erroneous. A slightly more troubling problem is presented by the district court's decision to exclude Martinez and Jimenez and to substitute Negro. While Reyes' appeals brief says nothing about Quinones, it says that Negro "had nothing to do with the present indictment" and therefore could not be included as a participant. The government in response points us to statements in the sentencing hearing that suggest that Toledo had met Negro through Reyes; but it is not clear that the transaction in which Negro played a role involved Reyes at all. In any event, the district court--faced with Reyes' objection to describing Negro as a participant--did not ___ reaffirm that designation. Instead, the court said: "Well, Counsel, still you have--you have the other--other--the -10- -10- `otherwise extensive.'" After further colloquy the court continued:  [E]ven if you take Negro away from the picture, take it off the picture--out of the picture still there are `otherwise extensive,' and this was a conspiracy that went through Panama, Colombia, Puerto Rico and sometimes the Dominican Republic . . . . So that's my ruling. Let's move on. We conclude that the four-level adjustment can be affirmed without difficulty on the "otherwise extensive" branch of section 3B1.1. The district court was entitled to find that as to Reyes there were multiple participants, a number of trips, broad geographic scope and a substantial amount of heroin. Under the precedents, this is sufficient. See United States v. Dietz, 950 F.2d 50, 53 (1st Cir. 1991); ___ _____________ _____ United States v. Morphew, 909 F.2d 1143, 1145 (8th Cir. ______________ _______ 1990). Reyes challenges other aspects of the sentencing-- including the determination that he played a leadership role and could properly be sentenced to a fine of $50,000--but the remaining arguments are not substantial. 3. As we noted at the outset, there are a large number of additional claims of error. Reyes, for example, argues that a continuance sought only six days before trial should have been granted, a matter that is largely within the trial court's discretion absent extraordinary circumstances not present here. United States v. Soldevila-Lopez, 17 F.3d 480, _____________ _______________ 487 (1st Cir. 1994). Reyes also asserts that his conviction -11- -11- was based upon perjured testimony but the record reflects only the kinds of conflicts or discrepancies that are commonly left to juries. Both Reyes and Jimenez complain that testimony was admitted concerning extraneous criminal acts, including other drug transactions involving Toledo, and that the testimony was inadmissible (as irrelevant or as hearsay), highly prejudicial, or both. On examination, it appears that almost all of the evidence in question related to incidents that were relevant (e.g., to explain how Toledo came to need a ____ false passport) or not made the subject of a contemporaneous objection or both. None of these claims needs separate discussion.  Reyes objects now to three alleged misstatements by the prosecutor in closing arguments. The only one objected to at trial was a reasonable inference by the prosecutor; and the only actual misstatement (that the passport sought by Toledo was actually used) was the kind of slip of the tongue that could easily have been corrected at the time if an objection had been made; and the evidence plainly showed that the passport had been sought based on false statements but never issued. The jury instructions challenged on appeal were not objected to at the time and are not remotely plain error. Both Reyes and Jimenez argue that the government failed to disclose to the defense material that might have been used -12- -12- to impeach Toledo and Martinez. The government stated in Reyes' sentencing hearing and again in its brief that it did not have the information that appellants argue should have been disclosed, and appellants bring to our attention no substantial evidence that the prosecution did have the information. The government has no obligation to disclose information it does not possess, United States v. Sepulveda, _____________ _________ 15 F.3d 1161, 1179 (1st Cir. 1993); the rule of Brady v. _____ Maryland, 373 U.S. 83 (1963), imposes no general due ________ diligence requirement. United States v. Moore, 25 F.3d 563, _____________ _____ 569 (7th Cir. 1994). Finally, Reyes says that he was denied effective assistance of counsel based on a parade of alleged failures by counsel to investigate or object and also the failure to have Reyes testify at trial. These are fact-based claims that must be presented to the district court in the first instance and we therefore do not reach them. United States _____________ v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991), cert. denied, _______ ____________ 112 S. Ct. 986 (1992). Affirmed.  ________ -13- -13-