United States Court of Appeals United States Court of Appeals
 For the First Circuit For the First Circuit
 

No. 97-1139

 UNITED STATES OF AMERICA,

 Plaintiff, Appellee,

 v.

 LUIS A. ALICEA-CARDOZA,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Salvador E. Casellas, U.S. District Judge] 

 

 Before

 Torruella, Chief Judge, 
 Cyr, Senior Circuit Judge, 
 and Lynch, Circuit Judge. 
 

 Rafael Anglada-Lopez for appellant. 

 Miguel A. Pereira-Castillo, U.S. Department of Justice, 
with whom Guillermo Gil, United States Attorney, and Jose A. 
Quiles-Espinosa, Senior Litigation Counsel, were on brief for 
appellee.

 

 December 19, 1997
 

 LYNCH, Circuit Judge. A cocaine distribution LYNCH, Circuit Judge. 

conspiracy out of the Virgilio D vila Public Housing Project

in Bayam n, Puerto Rico led to the indictment of thirty-six

defendants. Twenty-five pled guilty either before trial or

shortly after trial started. Eight defendants were tried to

verdict, five were acquitted.

 Luis Alicea-Cardoza, nicknamed "Burbuja", was one

of the three convicted and now appeals. His main contention

is that the jury, confronted with a maze of defendants and

drug and violence evidence, convicted him when there was

precious little evidence, too little, he says, to support a

conviction. The little evidence there was, he says, was

based on beeper transmissions and this court, which has not

previously addressed the question, should find those beeper

records erroneously admitted. Although Alicea-Cardoza has

ably argued these and ancillary points, we affirm his

conviction under 21 U.S.C. 841 and the drug conspiracy

statute, 21 U.S.C. 846, and his sentence of 27 years

imprisonment.

 I I

 Because the defendant attacks the sufficiency of

the evidence, we review the evidence in the light most

favorable to the verdict, with a view to whether a rational

juror could have found guilt beyond a reasonable doubt. See 

United States v. Cruz, 981 F.2d 613, 615 (1st Cir. 1992).  

 -2- 2

 Interception of telephone messages in April 1994

confirmed that Jorge Solano-Moreta was in charge of an

organization selling drugs, principally cocaine, at numerous

drug points in Bayam n, including a drug point at the

Virgilio D vila Housing Project. Alicea-Cardoza had acted as

a "runner" (meaning that he managed the business operation by

receiving, accounting for, and safeguarding the proceeds of

drug sales) for a Virgilio D vila drug point since 1992.

Approximately four kilograms of cocaine were sold monthly at

that drug point. Alicea-Cardoza was also a runner for

another drug point in the Virgilio D vila Housing Project.

There, approximately one half of a kilogram of cocaine base

was sold monthly. 

 The evidence implicating Alicea-Cardoza in the

conspiracy consisted principally of the testimony of Amiud

Alicea-Mat as and charts of intercepted beeper messages sent

to Solano-Moreta by Alicea-Cardoza. Alicea-Mat as testified

that he was part of a drug selling organization at the

Virgilio D vila Housing Project known as the Virgilio D vila

group, which sold cocaine, crack, and heroin. Alicea-Mat as

said he ran several drug points and was a trigger man for the

group. He testified that the members of the group included

Luis Rosario-Rodr guez, Richard Rosario-Rodr guez and Edwin

Rosario-Rodr guez (three brothers who ran the group), Felipe

Garc a-Roque, as well as defendant "Luis Alicea, [and] some

 -3- 3

people who are confined in state institutions." When asked,

" . . . do you know if Ruiz [sic] Alicea has a nickname or

nicknames," Alicea-Mat as responded, "Burbuja". When asked

whether "Luis Alicea-Cardoza, also known as Burbuja" was

seated in the courtroom, Alicea-Mat as identified Alicea-

Cardoza. And when asked "How many Burbujas worked for this

organization or group," Alicea-Mat as responded, "Just one

Burbuja." "Burbujas" means "Bubbles" and members of the

jury, applying their common experience of Puerto Rican 

society, could reasonably have regarded it as an unusual male

nickname. No evidence was presented to suggest that another

"Burbuja" may have been involved in this organization.

 Alicea-Mat as testified that the Virgilio D vila

group and Solano-Moreta "established a solid relationship"

during 1992 and 1993 to help each other fight "wars" against

competing groups for control of the local drug trade.

Solano-Moreta and the Virgilio D vila group would meet to

discuss drug points and plan attacks against enemies of both

groups, pooling their resources "in order to be strong."

They also did business with each other: Solano-Moreta sold

kilos of drugs to the Virgilio D vila group, which in turn

sold the drugs throughout the Virgilio D vila Housing

Project. In addition, the Virgilio D vila group collected

money for Solano-Moreta at drug points owned by him and took

the money to him. They even committed murders with Solano-

 -4- 4

Moreta to enforce their control over the drug trade. The two

groups developed a "frequent and close friendship" and "[met]

on many occasions." When asked who attended these meetings,

Alicea-Mat as responded:

 Richard Rosario-Rodr guez, Edwin Rosario-
 Rodr guez, I, Willy Nariz, [Jorge] Solano
 Moreta, Perla. When [Jorge] would come
 down to the Virgilio D vila Housing
 Project, Luis Rosario-Rodr guez was
 there. Luis Rosario-Rodr guez [sic], 
 alias Burbuja, and several other people 
 who are jailed at the state institution.1

(emphasis added).

 In addition to this testimony, Alicea-Cardoza was

implicated by charts the government prepared of beeper

messages. These charts recorded the content of approximately

four thousand messages received between April 26, 1995 and

June 5, 1995 by Solano-Moreta on his beepers. The messages

were intercepted by federal agents pursuant to court

authorization. Special Agent Gilberto Vazquez, who directed

the investigation, testified that the charts transcribing the

messages sent to Solano-Moreta were produced by a pen

register, which intercepted the messages sent to Solano-

Moreta's beeper and printed them out. Vazquez also testified

that he tested the pen register system for accuracy by

  

1. Alicea-Mat as seemed to have mistakenly repeated the name
Luis Rosario-Rodr guez. The jury could have concluded this
was an inadvertent mistake, rather than evidence of a
different "Burbuja", especially in light of Alicea-Mat as's
direct identification of Alicea-Cardoza as the real
"Burbuja".

 -5- 5

checking its results against the messages received by a clone

beeper, an exact replica of Solano's beeper. He testified

that the pen register and clone beeper received exactly the

same messages received by Solano-Moreta.

 Several hundred of the messages to Solano-Moreta

recorded in the beeper charts were from "Burbuja". Typical

were messages asking Solano-Moreta to call "Burbuja" at a

certain phone number or messages leaving a phone number

accompanied by "Burbuja, Urgente." Some messages referred to

obtaining "work". Vazquez testified that, in his

considerable experience investigating drug gangs, these and

other messages received by Solano-Moreta involved the drug

trade.

 Of the five members of the Virgilio D vila group

who originally went to trial, only Alicea-Cardoza was

convicted.

 II II

 Alicea-Cardoza claims the district court admitted

the beeper charts without proper authentication under Fed. R.

Evid. 901, that the evidence was insufficient to support his

conviction, and that he was subject to a constructive

amendment to the indictment.

A. Beeper Charts 

 Under Fed. R. Evid. 901(a), "The requirement of

authentication or identification as a condition precedent to

 -6- 6

admissibility is satisfied by evidence sufficient to support

a finding that the matter in question is what its proponent

claims." Fed. R. Evid. 901(a). To establish authenticity,

the proponent need not rule out "all possibilities

inconsistent with authenticity, or . . . prove beyond any

doubt that the evidence is what it purports to be. Rather,

the standard for authentication, and hence for admissibility,

is one of reasonable likelihood." United States v. 

Holmquist, 36 F.3d 154, 168 (1st Cir. 1994). Generally, if 

the district court is satisfied that the evidence is

sufficient to allow a reasonable person to believe the

evidence is what it purports to be, Rule 901(a) is satisfied

and the jury may decide what weight it will give the

evidence. See id. at 167. Because authentication rulings 

are necessarily fact specific, we review such rulings only

for mistake of law or abuse of discretion. See id.  

 The district court did not abuse its discretion in

admitting the beeper charts as a record of the messages sent

to Solano-Moreta's beeper. Vazquez adequately explained the

means by which the pen register intercepted and recorded the

beeper messages, and how the clone beeper confirmed the

accuracy of that system. Asked by the prosecution how the

beeper charts had been produced, Vazquez responded, "It is a

machine known as a pen register. As the message comes in the

pen register just annotates or writes exactly what comes out

 -7- 7

on the beeper." Vazquez explained clone beepers. "A clone

is an exact replica of a beeper. If I was going to have a

clone to my beeper and you had it, you would receive exactly

the same message that I get." Vazquez testified that he

carried a clone of Solano-Moreta's beeper for about a week

during the intercept period. Asked whether Vazquez found any

difference between the written messages produced by the pen

register and those received by the clone beeper, Vazquez

responded, "No difference." This testimony was not

contradicted or challenged by the defense. 

 Alicea-Cardoza's argument is that the charts of

these phone calls were not properly authenticated because

there was no evidence that Alicea-Cardoza was in fact the

person who left the messages. Defendant relies on the

general rule that self-identification by a speaker alone is

not sufficient authentication. See United States v. Puerta- 

Restrepo, 814 F.2d 1236, 1239 (7th Cir. 1987); United States 

v. Pool, 660 F.2d 547, 560 (5th Cir. Unit B Nov. 1981). We 

agree that, under Puerta-Restrepo and Pool, the beeper charts 

could not be authenticated under Rule 901 were they being

offered for the sole purpose of identifying Alicea-Cardoza as

the "Burbuja" who sent the messages. 

 Here, however, the government's evidence only

showed the beeper messages that Solano-Moreta himself had

received, not who specifically had sent them. This is not a

 -8- 8

case of the jury being asked to take on faith that a caller

was who the witness said the caller was. Rather, the charts

were introduced for the different purpose of proving that

Solano-Moreta received these messages on his beeper, and the

beeper charts plainly constitute an accurate record of the

messages that Solano-Moreta received. As Vazquez testified,

a beeper decodes a digital message which it displays on its

screen, e.g., "Call Burbuja." The pen register intercepts

that message and records it, over time producing a complete

record of all messages sent to that beeper. That these

beeper charts produced by the pen register are an accurate

record of the messages sent to Solano-Moreta's beeper was

established by the testimony of Vazquez, who explained that

the beeper charts were checked against a clone beeper and

that there was no difference between the two. This testimony

was sufficient to authenticate the beeper charts as records

of the messages sent to Solano-Moreta's beeper. 

 Whether the "Burbuja" who sent the messages was

Alicea-Cardoza is a separate question not within the purview

of Rule 901. The jury had to decide on its own, taking into

account other evidence, some direct and some circumstantial,

whether Alicea-Cardoza was "Burbuja". Given that evidence,

the jury reasonably established that "Burbuja" was a member

of the drug ring and that "Burbuja" was, in fact, Alicea-

Cardoza.

 -9- 9

 It is true that someone who was not "Burbuja" could

have been leaving the messages or that some other person

named "Burbuja" left the messages. Alicea-Cardoza did not

make such a contention at trial, but if he had, such a

contention does not go to whether the beeper charts are

properly authenticated. The jury could still have assessed

the weight of the evidence in light of that contention and

made a judgment accordingly. In sum, whether the "Burbuja"

who sent the messages is in fact Alicea-Cardoza, or perhaps

some other "Burbuja", is a separate matter for the jury to

decide. 

 As for the whether the charts were authenticated,

the standard of reasonable likelihood was satisfied in this

case.

B. Sufficiency 

 Thus, we turn to the question whether the evidence

in this case is sufficient to support Alicea-Cardoza's

conviction. In assessing a sufficiency challenge, we "review

the record to determine whether the evidence and reasonable

inferences therefrom, taken as a whole and in the light most

favorable to the prosecution, would allow a rational jury to

determine beyond a reasonable doubt that the defendant was

guilty as charged." United States v. Fulmer, 108 F.3d 1486, 

1490 (1st Cir. 1997) (citations, internal quotation marks,

and alterations omitted). 

 -10- 10

 Taking the beeper charts and Alicea-Mat as's

testimony together, we conclude the evidence was sufficient.

Alicea-Mat as's testimony identifies Alicea-Cardoza as a

member of the Virgilio D vila group and links the drug-

related enterprises of that group to those of Solano-Moreta.

The testimony establishes that Alicea-Cardoza was "Burbuja".

The beeper charts demonstrate that "Burbuja" had frequent

contact with Solano-Moreta. And the jury could easily find

that these communications involved matters related to the

manufacture and sale of drugs. While it is possible that the

"Burbuja" who sent those messages was indeed another

"Burbuja", or that Alicea-Cardoza and Solano-Moreta had only

a non-criminal relationship, the jury was not required to

accept either of these conclusions. To the contrary, the

evidence clearly suggests that Alicea-Cardoza was closely

involved with Solano-Moreta in the drug trade, and is plainly

sufficient to sustain the conviction. 

 That the jury did not also convict other members of

the Virgilio D vila group based solely on Alicea-Mat as's

testimony does not undercut this conclusion. The jury may

well have regarded Alicea-Mat as's testimony as insufficient

to prove the guilt of those other defendants beyond a

reasonable doubt, but this does not mean, as Alicea-Cardoza

argues, that we must therefore accord Alicea-Mat as's

testimony no weight in considering this sufficiency claim.

 -11- 11

The jury could reasonably have found, as indeed it did, that

Alicea-Mat as's testimony in conjunction with the beeper

charts proved Alicea-Cardoza's guilt beyond a reasonable

doubt.

C. Constructive Variance 

 Alicea-Cardoza claims that his conviction amounts

to a constructive variance of the indictment in that (1) the

indictment charges him with being a triggerman, but he was

tried for being a runner, and (2) the evidence showed the

existence of multiple conspiracies, while Alicea-Cardoza did

not participate in the conspiracy for which he was convicted.

Variances between the indictment and the evidence ultimately

proved against a single defendant may be common when the

government prosecutes large criminal enterprises in a single

trial. See United States v. Glenn, 828 F.2d 855, 858 (1st 

Cir. 1987). When constructive variance is alleged on appeal

in a conspiracy case, under Glenn the following questions are 

asked: 

 (1) Is the evidence sufficient to permit
 a jury to find the (express or tacit)
 agreement that the indictment charges?
 (2) If not, is it sufficient to permit a
 jury, under a proper set of instructions,
 to convict the defendant of a related,
 similar conspiracy? (3) If so, does the
 variance affect the defendant's
 substantial rights or does the difference
 between the charged conspiracy and the
 conspiracy proved amount to "harmless
 error?

Id.  

 -12- 12

 As to the first test, the evidence permits a jury

to find that Alicea-Cardoza did conspire with Solano-Moreta

to distribute drugs and that he was an active participant in

that enterprise. Indeed, the beeper charts show that Alicea-

Cardoza and Solano-Moreta were in frequent communication.

Accordingly, that Alicea-Cardoza was indicted for being a

conspirator/triggerman but the evidence proved him a

conspirator/runner does not constitute impermissible

variance. "So long as the statutory violation remains the

same, the jury can convict even if the facts found are

somewhat different than those charged -- so long as the

difference does not cause unfair prejudice. United States v. 

Twitty, 72 F.3d 228, 231 (citing Glenn, 828 F.3d at 858). 

There is no unfair prejudice in this case. Alicea-Cardoza

had notice that he was under indictment for being involved in

the Solano-Moreta drug organization, and he knew that his

central defense needed to be that he was not part of that

organization -- as a triggerman, runner, or in any other

capacity. The error in the indictment was not so grave as to

cause Alicea-Cardoza to defend himself on the wrong grounds,

especially when the evidence adduced at trial showed Alicea-

Cardoza to be deeply involved in the Solano-Moreta

organization. 

 III III

 The sentencing appeal is also without merit. The

 -13- 13

court assigned Alicea-Cardoza a base offense level of thirty-

eight under U.S.S.G. 2D1.1 for conviction of an offense

involving at least 1.5 kilograms of cocaine base. The court

increased the offense level by two points to forty under

U.S.S.G. 2D1(b)(1), adopting the findings of the

presentence report that weapons were used by Alicea-Cardoza

in furtherance of the conspiracy. The court declined to

adopt the recommendation of the presentence report to raise

Alicea-Cardoza's offense level by an additional three points,

rejecting the report's finding that Alicea-Cardoza had a

managerial role in the conspiracy. The court found an

imprisonment range of 324 to 405 months, and sentenced

Alicea-Cardoza to 324 months in prison, including a statutory

minimum of ten years in jail under 21 U.S.C. 841(b)(1)(A).

 The government has the burden of proving drug

quantity by a fair preponderance of the evidence, see United 

States v. Morillo, 8 F.3d 864, 871, and amply met its burden 

here. The evidence shows that the Solano-Moreta organization

was a major drug distribution network buying and selling

hundreds of kilograms of cocaine and cocaine base through

various drug points, including those at the Virgilio D vila

Housing Project. The evidence shows that Alicea-Cardoza was

a runner for those drug points at Virgilio D vila. According

to the presentence report, Alicea-Cardoza "ran" a drug point

at which approximately four kilograms of cocaine were sold

 -14- 14

monthly, he "ran" another drug point at which approximately

one half kilogram of cocaine base was sold monthly. Given

this evidence, the district court did not commit error in

assigning Alicea-Cardoza a base offense level of thirty-eight

for committing an offense involving 1.5 kilograms of cocaine

base. This evidence at trial is sufficient to sustain the

offense level. As to Alicea-Cardoza's attack on the two

point increase in his offense level for use of a weapon, the

evidence at trial shows that Alicea-Cardoza was armed when he

served as a watchman for drug points in the Virgilio D vila

Housing Project. This is sufficient to sustain the increase.

 The judgment of the district court is affirmed.

 -15- 15